**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Christopher DUGUAY, Defendant–
Appellant.**

**No. 95–1768.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1995.

Decided Aug. 15, 1996.

Rehearing Denied Oct. 31, 1996.

James Porter (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Charles M. Shaw, James J. Knappenberger (argued), Clayton, MO, for Defendant–Appellant.

Before KANNE and DIANE P. WOOD, Circuit Judges, and SKINNER, District Judge.*

SKINNER, District Judge.

Defendant-appellant Christopher Duguay appeals his conviction and sentence for one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count I), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count III). Duguay argues that the district court erred in denying his motion to suppress 533 grams of cocaine the police discovered during a search of the automobile in which he was a passenger. We vacate the conviction for possession with intent to distribute cocaine, and remand for a new trial. The defendant having offered no argument in support of his appeal from the gun charge, we affirm his conviction on Count III.

## I.

## BACKGROUND

### A. The Arrest and Search

On the evening of May 3, 1994, a joint federal, state, and local task force known as the "Violent Crimes Initiative" was conducting a "sweep" in and around the federally-funded housing projects on Dooley Avenue in Alton, Illinois. The projects had recently experienced a crime wave, and members of the task force were engaged in identifying nonresidents for prosecution under local trespassing ordinances. Although the police focused on pedestrians, the task force also operated a roadblock on Dooley Avenue to question motorists.

At approximately 9 p.m., United States Deputy Marshal Michael Rehg observed a blue Nissan Maxima turn into a parking lot approximately 50 feet before the Dooley Avenue road block. Rehg associated the vehicle with the defendant, whom Rehg had encoun-

* Hon. Walter Jay Skinner of the District of Massa- chusetts, sitting by designation.

tered in an investigation of the East St. Louis cocaine distributor Ronald Blake. Duguay was a passenger in the vehicle, which was driven by his girlfriend Gloria Vaughn, a resident of the Dooley Projects.

Vaughn parked, locked the car, and activated the car alarm. As Vaughn and Duguay walked towards the apartments, Rehg and two other marshals approached the automobile and called upon Duguay to stop for questioning. Duguay and Vaughn proceeded towards the apartment. After several more exhortations to stop, during which time Duguay and Vaughn walked some distance from the car, Duguay turned around. Rehg cautioned Duguay to remove his hands from his pockets and indicated he was going to perform a pat down. After being spread against a different car, Duguay objected to the course of the frisk and struck Rehg with his elbow. After a brief altercation, Duguay was arrested for assault. The disturbance attracted a crowd of onlookers, including the defendant's brother William Cole.

After Duguay was handcuffed, he told Vaughn not to surrender the car keys. Alton Police Detective Scott Waldrup informed Vaughn that he was going to impound the car and demanded the keys. After she refused to surrender the keys, Waldrup arrested Vaughn for obstruction of justice and reached into her pocket to obtain the keys. Within ten minutes of Duguay's arrest, Waldrup and Detective Alfred Adams unlocked the car and began to inventory its contents. After finding nothing of interest in the passenger area, Waldrup released the hatch to the back seat and found a substantial quantity of crack cocaine in the trunk. Subsequent lab analysis found this to be equivalent to 533 grams of cocaine.

Shortly after her arrest, Vaughn consented to let the Alton police search her apartment where a Tech 9 handgun was found lodged behind a sofa. Although fingerprint analysis was inconclusive, Duguay signed a statement (penned by an Alton Police Detective) admitting ownership of the car, the crack, and the gun shortly after being brought into the Alton police station. Duguay was charged in a three count indictment alleging possession with intent to distribute the cocaine found in the car, unlawful possession of a firearm by a felon, and possession with intent to distribute narcotics within 1,000 feet of a school, in violation of 21 U.S.C. § 860.

### B. *Proceedings Below*

At the hearing to suppress the crack on August 19, 1994, Duguay argued (1) that the police were not legitimately present at the Dooley Housing Projects, (2) that the initial stop was in violation of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), (3) that the arrest was without probable cause, and (4) that the impoundment and subsequent inventory search of the automobile were illegal. After hearing testimony from Deputy Rehg, Detective Waldrup, and fifteen other witnesses (the relevant testimony of whom is summarized below), the district judge denied each of Duguay's claims. After a three day jury trial during which Duguay renewed his motion to suppress, and moved for an acquittal at the end of the presentation of evidence, he was convicted of the distribution of cocaine and possession of weapons counts. He was found not guilty of possession with intent to distribute within 1,000 feet of a school (Count II). Accordingly, on the basis of two prior felony drug trafficking convictions, Duguay was sentenced to life imprisonment without the possibility of parole under the career offender provision. U.S.S.G. § 4B1.1(A). Duguay was also sentenced to a ten-year concurrent sentence on the felon-in-possession count.

## II.

### ANALYSIS

### A. *Standard of Review*

█ The sole issue Duguay has raised on appeal is that the crack cocaine in his car was seized in contravention of the Fourth Amendment. We review the district court's findings of fact for clear error. *Ornelas v. United States*, — U.S. —, —, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). A finding is clearly erroneous when, after comprehensive review of the evidence, this court is left with "the definite and firm conviction that a mistake has been made." *United*

*States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994). We give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* at ——, 116 S.Ct. at 1663. We review questions of law and mixed questions of law and fact *de novo. Ornelas,* at ——, 116 S.Ct. at 1663. In reviewing a suppression motion, we may consider evidence introduced both at the pre-trial suppression hearing and at the trial itself. *Tilmon,* at 1224.

### B. *The Investigative Stop*

 Duguay's first contention is that the police lacked sufficient justification to stop him for questioning. Both parties have classified this action as an investigative stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The government does not contend that there was probable cause. *Terry* requires that in order to stop a person for investigative purposes, a law enforcement official must be "able to point to specific and articulable facts" that give rise to a reasonable suspicion of criminal activity. *Terry,* at 21–22, 88 S.Ct. at 1879–81. Under circuit precedent:

> [T]he reasonableness of an investigatory stop may be determined by examining: (1) whether the police were aware of specific and articulable facts giving rise to reasonable suspicion; and (2) whether the degree of intrusion was reasonably related to the known facts.

*Tilmon* at 1224. The inquiry on appeal must focus on "the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Ornelas,* at ——, 116 S.Ct. at 1661.

At the suppression hearing, Deputy Rehg identified four facts which led him to stop Duguay. First, Rehg believed that Duguay's automobile had pulled into the Dooley parking lot to avoid the police roadblock. Second, Rehg knew Duguay to be associated with Ronald Blake's narcotics distribution ring in East St. Louis. Third, Rehg believed that Duguay had sold crack cocaine to undercover police officers in the past. Finally, Rehg

knew that Duguay resided in a different housing project and was trespassing.

At oral argument, Duguay suggested that several of the articulated bases of suspicion were insufficient to justify an investigative stop. Taken separately, several of Rehg's reasons strike us as problematic. In particular, we are troubled by the government's suggestion in its brief that the stop was warranted because Duguay was about to enter a high crime housing project where he was not a resident. *See, e.g., Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) ("The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct."). We would similarly be wary if Deputy Rehg decided to stop Duguay for investigation solely on the basis of his criminal reputation, or presumed association with unsavory cohorts. Our unease is amplified because Rehg knew that there were no outstanding warrants for Duguay's arrest, suggesting his alleged misdeeds had not been deemed sufficiently well-established to merit application for an arrest warrant.

 Despite our qualms about components of the articulated suspicion, this particularized method of analysis misses the mark. Reasonable suspicion is to be determined in light of the totality of the circumstances. *See, e.g., United States v. Packer,* 15 F.3d 654, 658 (7th Cir.1994); *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–86, 104 L.Ed.2d 1 (1989). While Deputy Rehg's reliance on Duguay's suspected trespassing, nefarious associates, prior drug trafficking, and presence in a crime-ridden district might have been discretely impermissible, we conclude that the combination of these factors may arouse a reasonable suspicion in an objectively reasonable police officer.

This conclusion is consistent with this circuit's precedents which have upheld investigatory stops in light of all the circumstances, despite the presence of several questionable factors. *See, e.g., United States v. Feliciano,* 45 F.3d 1070, 1074 (7th Cir.), *cert. denied* —— U.S. ——, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995) (gang membership); *United States v.*

*Willis,* 37 F.3d 313, 316 (7th Cir.1994) (involvement in previous drug encounters); *United States v. Evans,* 994 F.2d 317, 322 (7th Cir.), *cert. denied* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993) (presence in a high crime area). Furthermore, the reasonableness of the suspicion was buttressed by Deputy Rehg's belief that Duguay's car had turned off the road in an attempt to avoid a roadblock on Dooley Avenue. *See, e.g., United States v. Trevino,* 60 F.3d 333, 335 (7th Cir.1995), *cert. denied* — U.S. —, 116 S.Ct. 739, 133 L.Ed.2d 689 (1996). Giving due weight to inferences drawn from these facts by the district judge and Marshal Rehg, we concur with the ruling of the district court that the cumulative effect of these articulated bases constituted a reasonable suspicion.

### C. *The Impoundment and Inventory Search*

 Duguay's other argument is that the district court erred in determining that the warrantless search and seizure of the Nissan Maxima were valid. The sole theory advanced by the government is that the search of Duguay's car was pursuant to a valid decision to impound the car, and that the search was for inventory purposes. Both the decision to take the car into custody and the concomitant inventory search must meet the strictures of the Fourth Amendment. *See, e.g., Soldal v. Cook County,* Ill., 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Although the parties have commingled the issues in their briefs, the decision to impound (the "seizure") is properly analyzed as distinct from the decision to inventory (the "search"). *See, e.g., Cardwell v. Lewis,* 417 U.S. 583, 593, 94 S.Ct. 2464, 2470–71, 41 L.Ed.2d 325 (1974). After careful review of the large body of case law on inventory searches and the considerably smaller number of cases on impoundment, we must conclude that the police conduct here violated the Fourth Amendment. We have two independent reasons for reaching this conclusion.

 1. "[S]tandardized criteria or established routine must regulate" inventory searches. *Florida v. Wells,* 495 U.S. 1, 4, 110

S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (suppressing evidence because the Florida Highway Patrol did not have a policy with respect to opening containers within a seized car). Among those criteria which must be standardized are the circumstances in which a car may be impounded. The Illinois Motor Vehicle Code extensively regulates the circumstances of permissible impoundment. *See 625 ILCS 5/11–1302, et seq.*

Almost six years after *Wells,* the Alton police department has not drafted a written policy indicating the limited circumstances under which a car may be impounded or searched. Several opinions from the Illinois appellate courts mandate the suppression of evidence because local police departments failed to promulgate written policies. *See, e.g., People v. Stack,* 244 Ill.App.3d 393, 184 Ill.Dec. 339, 613 N.E.2d 366, *appeal denied,* 152 Ill.2d 576, 190 Ill.Dec. 907, 622 N.E.2d 1224 (1993); *People v. Krueger,* 268 Ill. App.3d 191, 205 Ill.Dec. 581, 643 N.E.2d 872 (1994), *appeal denied,* 161 Ill.2d 534, 208 Ill.Dec. 365, 649 N.E.2d 421 (1995).[1]

 The lack of a written policy, however, is not dispositive. *Wells* emphasizes "standardized criteria or established routine," however, suggesting that a well-honed department routine may be sufficient. *See, e.g., United States v. Arango–Correa,* 851 F.2d 54, 59 (2nd Cir.1988); *cf. Pembaur v. Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986) (an "official policy" need not be in writing to support liability under 42 U.S.C. § 1983). At the suppression hearing, two Alton police officers testified about the department impoundment and search policies. The district judge found that the testimony of Detective Scott Waldrup was sufficient to establish that the department had a standard policy.

We disagree. While a written protocol is not *sine qua non,* we are not satisfied that the Alton Police Department employs a standardized impoundment procedure. Detective Waldrup (who was the department field instructor) testified:

---

1. These opinions from the Fourth Appellate District of Illinois are not binding on the Alton police. Nevertheless, they have some persuasive force indicating the trend of Illinois law.

Since I have been on the department we always inventory and tow vehicles after the person in control of the vehicle or the owner is arrested.

*Aug. 19, 1994 Suppression Hrg. Tr.*, at 26. As Duguay was not driving the vehicle, under Waldrup's described policy, the impoundment was authorized because Duguay was assumed to be the owner of the car—a proposition which was hotly disputed at the suppression hearing.

Waldrup's testimony is inconsistent with the suppression hearing testimony of Detective Alfred Adams, who testified that the Alton policy was: "if a person is arrested in a vehicle, we tow the vehicle." *See August 19, 1994 Suppression Hrg. Tr.*, at 38. Under Adams' described policy, impoundment was authorized because Duguay was a passenger.

Detective Waldrup's testimony at trial further undermines the contention that the department had a routine policy. Instead of reiterating his earlier articulation, Waldrup testified:

> [S]ince I have been on the Alton Police Department we have had an unwritten departmental policy. Any time a person is arrested, taken from the vehicle or out of the vehicle where they do not have control over it, we inventory and tow the vehicle.

*Nov. 15, 1994 Trial Tr.*, at 131. In light of these inconsistencies, in our opinion the district court was not warranted in determining that the Alton impoundment policy was sufficiently standardized under *Wells*.

▪ 2. The leading case of *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) treats impoundments and inventory searches as distinctive processes, which are warranted in different (though frequently overlapping) circumstances. Impoundments by the police may be in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles," and "automobiles which violate parking ordinances, and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *Opperman*, at 368–369, 96 S.Ct. at 3096–97. An impoundment must either be supported by probable cause, or be consistent with the police role as "caretaker" of the streets and completely unrelated to an ongoing criminal investigation. *Id.*, at 370, n. 5, 96 S.Ct. at 3097, n. 5. These rationales are distinct from the permissible reasons for conducting a routine inventory of the contents of an impounded vehicle, which are "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987).

▪ The Alton police did not articulate a constitutionally legitimate rationale for impounding Duguay's car. At the suppression hearing, Detective Waldrup testified that the department:

> tow[s] vehicles after the person in control of the vehicle or the owner is arrested ... for the protection of the owner of the vehicle and for the liability purpose of the Alton Police Department. We're not about to leave a vehicle parked on Dooley Drive, especially after we have arrested the occupant of it. The vehicle could be vandalized, stolen, a number of things, in which case the Alton Police Department would be liable for the condition of the vehicle.

*August 19, 1994 Suppression Hrg. Tr.*, at 26–27. While protection of the arrestee's property and municipal liability are both valid reasons to conduct an inventory after a legal impoundment, they do not establish the *a priori* legitimacy of the seizure.

▪ Detective Waldrup's rationales do not support the decision to impound Duguay's car. The suggestion that the police were obliged to impound the vehicle "to protect it" from theft or vandalism, strikes us as making up new police obligations after the fact where none existed before. The police do not owe a duty to the general public to remove vulnerable automobiles from high-crime neighborhoods. The Illinois Local Government Tort Immunity statute does not impose a duty on the police to protect the property of individuals from tort or crime. *See* 745 ILCS 10/4–102 ("Neither a local public entity nor a public employee is liable for ... failure to prevent commission of crimes."); *see also Bank of Illinois v. Over,*

65 F.3d 76, 77 (7th Cir.1995). Similarly, the police owe no duty to incarcerated persons to protect personal property from private injury. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

█ As for avoiding civil liability, it is clear that impounding the car increased the City of Alton's potential exposure. The state owes no legal duty to protect things outside its custody from private injury. *Cf. DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *J.O. v. Alton Community Unit School Dist. 11*, 909 F.2d 267, 272 (7th Cir.1990). As there is no tort for omissions by state actors, the assertion of custody over Duguay's automobile could only increase the risk of liability.

Furthermore, impoundment based solely on an arrestee's status as a driver, owner, or passenger is irrational and inconsistent with "caretaking" functions. Under either Detective Waldrup or Detective Adams' policies, towing is required any time the arrestee is carted off to jail, regardless of whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard.

Duguay's car was impounded after his arrest, despite the fact that Gloria Vaughn had driven the car, had possession of the keys, and was prepared to remove the car from the street. There was unrefuted evidence that Duguay's brother William Coles, who is another son of the title owner, was also present at the time of the arrest. *Aug. 19, 1994 Suppression Hrg. Tr.*, at 48.

█ The touchstone of Fourth Amendment analysis is "reasonableness." *See, e.g., Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). The policy of impounding the car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for impound-

ment is for the "caretaking" of the streets. While it is eminently sensible not to release an automobile to the compatriots of a suspected criminal in the course of a criminal investigation, if the purpose of impoundment is not investigative, and in the absence of probable cause, we do not see what purpose denying possession of the car to a passenger, a girlfriend, or a family member could possibly serve. *See, e.g., United States v. Pappas*, 735 F.2d 1232 (10th Cir.1984).

█ The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots. This conclusion is consistent with this court's inventory search precedents. *See, e.g., United States v. Wilson*, 938 F.2d 785 (7th Cir. 1991), *cert. denied* 502 U.S. 1062, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992) (solo driver arrested); *United States v. Velarde*, 903 F.2d 1163 (7th Cir.1990) (both passenger and driver had suspended licenses); *United States v. Griffin*, 729 F.2d 475 (7th Cir.), *cert. denied* 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984) (driver lacked valid license, and passenger arrested for outstanding warrant). Similarly, the Illinois courts have repeatedly found that impoundments and subsequent inventory searches are invalid if the basis of impoundment was not reasonable. *See, e.g., People v. Fox*, 62 Ill.App.3d 854, 20 Ill.Dec. 84, 379 N.E.2d 917 (1978) (passenger could have removed car); *People v. Velleff*, 94 Ill. App.3d 820, 50 Ill.Dec. 222, 419 N.E.2d 89 (1981) (passenger could have removed car); *People v. Brown*, 100 Ill.App.3d 57, 55 Ill. Dec. 429, 426 N.E.2d 575 (1981) (car legally parked and no indication it had been abandoned). Under Illinois law, impoundment is permissible only when the arrestee was not able to provide for immediate removal of the vehicle.[2] This principle is also reiterated in

---

2. Impoundments by Illinois police have been affirmed in many circumstances where the arrestee could not provide for the speedy and efficient removal of the car, such as where the driver is the sole occupant and is legitimately arrested. *See, e.g., Trevino*, at 334; *People v. Braasch*, 122 Ill.App.3d 747, 78 Ill.Dec. 67, 461 N.E.2d 651

(1984). Similarly, impoundment is appropriate when the car has been abandoned or was illegally parked, *see, e.g., Illinois v. Hundley*, 156 Ill.2d 135, 189 Ill.Dec. 43, 619 N.E.2d 744 (1993), or when the automobile has been involved in a serious accident, or the driver consents to towing. *See, e.g., People v. West*, 206 Ill.App.3d 407,

the Illinois Motor Vehicle Code, which enumerates the circumstances in which the police may impound a vehicle.[3] These Illinois authorities are illustrative of the constitutionally permissible parameters of the power to impound. The government has not satisfied its burden of showing that this impoundment was reasonable or permissible.

### D. The Decision to Suppress

██ Having concluded that the impoundment and search of Duguay's car constituted a violation of the Fourth Amendment, we now address the separate question of whether the exclusionary rule's remedy is appropriate. See Arizona v. Evans, —— U.S. ——, ——, 115 S.Ct. 1185, 1190, 131 L.Ed.2d 34 (1995). Evans requires a court finding a Fourth Amendment violation to determine whether, in context, suppression of the evidence is consistent with the exclusionary rule's "general deterrent effect" on future police conduct. Id. In our opinion, suppression of the evidence is consistent with the rule's general deterrent effect; the government has offered no basis for a contrary conclusion.

### III.

### CONCLUSION

For the foregoing reasons, the conviction on Count III is AFFIRMED. The denial of the motion to suppress is REVERSED. The convic-

tion on Count I is VACATED and Count I is REMANDED for a new trial.

KANNE, Circuit Judge, dissenting in part and concurring in part.

In weighing the testimony of the Alton police detectives, the majority notes what are described as "inconsistencies" and thus determines that the Alton police did not have a standard policy with regard to the impoundment of vehicles. Supra at 352. I disagree.

The backdrop for the quoted testimony concerned the existence of the department's impoundment policy when the owner of a vehicle is not present and the person in control of the vehicle is taken into custody. At the suppression hearing, Detective Adams testified:

[I]f a person is arrested in a vehicle, we tow the vehicle.

And Detective Waldrup testified:

[W]e always inventory and tow vehicles after the person in control of the vehicle or the owner is arrested.

Finally, at trial, Detective Waldrup stated:

Any time a person is arrested, taken from the vehicle or out of the vehicle where they do not have control over it, we inventory and tow the vehicle.

Rather than being inconsistent, a realistic reading of this testimony, placed in context, discloses that the Alton police have a standard policy that if the person in control of a vehicle is arrested and taken into custody,

---

151 Ill.Dec. 433, 564 N.E.2d 888 (1990), appeal denied 136 Ill.2d 553, 153 Ill.Dec. 383, 567 N.E.2d 341 (1991). Impoundment may be appropriate where no passenger has a valid license. See, e.g., United States v. Covarrubias, 65 F.3d 1362 (7th Cir.1995) (driver and all passengers (three minor children) all lack licenses); Illinois v. McCoy, 269 Ill.App.3d 587, 207 Ill.Dec. 274, 646 N.E.2d 1361 (1995) (driver and both passengers lacked licenses). Finally, impoundment may be appropriate where all passengers have been legally arrested or are insufficiently sober to take charge of the car. See, e.g., United States v. Young, 38 F.3d 338 (7th Cir.1994) (driver and all passengers arrested for suspected abduction of minor); People v. Clark, 65 Ill.2d 169, 2 Ill.Dec. 578, 357 N.E.2d 798 (1976), cert. denied 431 U.S. 918, 97 S.Ct. 2184, 53 L.Ed.2d 229 (1977) (driver and only passenger arrested). See also United States v. Rodriguez–Morales, 929 F.2d 780 (1st Cir.1991), cert. denied 502 U.S. 1030, 112 S.Ct.

868, 116 L.Ed.2d 774 (1992) (collecting federal cases).

**3.** Under the Motor Vehicle Code, the police may remove (1) "any unattended vehicle illegally left standing" on a public thoroughfare "under such circumstances as to obstruct the normal movement of traffic," under 625 ILCS 5/11–1302(b), (2) a vehicle which has been illegally parked, under 625 ILCS 5/11–1302(a); 11–1301, (3) a vehicle which has been reported stolen, under 625 ILCS 5/11–1302(c)(1), (4) a vehicle when "the person or persons in charge of such vehicle are unable to provide for its custody or removal," under 625 ILCS 5/11–1302(c)(2), and (5) a vehicle when the "person driving or in control" of a vehicle has been arrested and the "officer is required by law to take the person arrested before a proper magistrate without unnecessary delay," under 625 ILCS 5/11–1302(c)(3).

that vehicle is impounded and an inventory search conducted. It certainly does not seem to me to have been error for the long-tenured district judge—who observed the detectives testify—to have made such a determination.

The Supreme Court in *Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), directs that "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." While briefly mentioned by the majority, I do not believe this admonition by the Supreme Court played a part in the majority's analysis of the existence of a standard impoundment policy.

Turning to the validity of the impoundment of the vehicle controlled by Duguay, it is not my view that the Alton police detectives were (as the majority suggests) "making up new police obligations after the fact where none existed before." *Supra* at 352. This is a clear indication-although unstated— that the majority believes the impoundment of the car over which Duguay had control to be pretextual. Again, I see no reason to discount the district judge's contrary credibility determination. More significantly, however, the issue is not a question of pretext but whether the impoundment was objectively reasonable under the circumstances.

Like the district judge, I find that the situation with which the detectives were confronted was sufficient to establish a reasonable and constitutionally correct basis for impounding Duguay's vehicle, to-wit: prevent it from being vandalized or stolen.

We, along with other courts of appeals, have determined that the police may lawfully impound automobiles when doing so accords with established procedures and is necessary either to remove the automobile from a public way or to protect the automobile or its contents from theft or vandalism. *See, e.g., United States v. Ramos-Morales,* 981 F.2d 625, 627 (1st Cir.1992); *Cabbler v. Superintendent,* 528 F.2d 1142, 1145–46 (4th Cir. 1975); *United States v. Staller,* 616 F.2d 1284, 1290 (5th Cir.), *cert. denied,* 449 U.S.

869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); *United States v. Balanow,* 528 F.2d 923, 924 (7th Cir.1976); *United States v. Agofsky,* 20 F.3d 866, 872–73 (8th Cir.1994); *United States v. Ibarra,* 955 F.2d 1405, 1409 (10th Cir.1992). We recognized in *Griffin* that a police department's unique province as a caretaker of the public interest affords it some degree of latitude in determining whether impoundment is appropriate. 729 F.2d at 480 (citing *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973); *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976)).

In this case, the officers were faced with the choice of abandoning the car in a high crime area (with the attendant consequences) or impounding it for safekeeping. It seems quite reasonable for the Alton police to have opted for impoundment where the owner is absent and the person asserting control is under arrest. The police were certainly not required to turn the car over to bystanders Coles or Vaughn. The most prudent and constitutionally valid course, under the situation which presented itself to the detectives, was the one taken.

I therefore dissent as to Count I, and I concur with the result in Count III.