OPINION OF THE COURT
Ellen M. Yacknin, J.
Defendant Rhondell Miles is charged with criminal possession of a controlled substance in the seventh degree, a misdemeanor under Penal Law § 220.03, and the traffic infraction of riding as a passenger in an automobile without wearing a seat belt on June 16, 2003. Defendant Miles moves to suppress the evidence obtained as a result of the allegedly illegal inventory search of the automobile in which he was riding, and the statements he made to the police. The People oppose defendant’s motion, asserting that the inventory search was lawful and that defendant’s statements were voluntary.
A probable cause hearing was conducted by the court on October 6, 2003. The two police officers involved in defendant’s arrest and the search of the automobile testified for the People. Defendant Miles offered no witnesses or evidence. Having reviewed the credible testimony, and analyzed applicable legal principles, the court makes the following findings of fact and conclusions of law.
Findings of Fact
On June 16, 2003, at approximately 8:00 p.m., Rochester Police Department (RPD) Officers Randy Potluck and Scott Ferro were driving in a marked patrol car on Conkey Avenue at Avenue D in Rochester, New York. While Officers Potluck and Ferro were stopped at the intersection’s stop sign on Conkey Avenue, heading northbound, they noticed a 1989 blue Honda stop at *568 the intersection’s stop sign, heading westbound on Avenue D. The officers noticed that neither the driver nor defendant Miles, who was sitting in the front passenger seat, was wearing his seat belt, in violation of New York State law. Besides noticing the absence of seat belts, neither officer observed any furtive or suspicious movements on the part of the driver or defendant Miles.
Officers Potluck and Ferro proceeded ¡to make a routine traffic stop of the automobile. After the car' came to a halt, Officer Ferro approached the driver’s side, and Officer Potluck approached the passenger’s side. Upon investigation, Officer Ferro discovered that the driver’s operator’s license was suspended.
In Officer Potluck’s words, the officers then “removed” the driver and defendant Miles from the Honda “for officer safety reasons,” “patted [them] down,” and “secured” them in the back seat of their patrol car. Before securing the driver and defendant Miles, the officers had not received any information linking the Honda to any type of criminal investigation. Before patting the driver and defendant Miles down, neither officer observed any protrusions or bulges on their persons. Before placing the driver and defendant Miles in the patrol car, neither officer saw them make any furtive or suspicious movements.
Officers Potluck and Ferro then took steps to have the car towed and impounded. According to Officer Potluck, he “was following . . . department policy” with respect to towing the car. However, neither Officer Potluck nor Officer Ferro was able to state, summarize, explain or provide; a copy of the department’s policy with respect to the impouridment of cars involved in traffic violations. Before impounding the car, neither Officer Potluck nor Officer Ferro asked the driver or defendant Miles whether defendant Miles or anyone else could drive the car away rather than having it towed.
Before it was towed, Officer Potluck conducted an inventory search of the car. Neither officer had seen any contraband in the car before it was searched, nor was any contraband found on either the driver or defendant Miles. While searching the car, however, Officer Potluck found a small white bag filled with cocaine under the driver’s seat. When Officer Potluck asked them about the cocaine, the driver and ¡defendant Miles both denied owning or knowing about the cobaine’s existence. The driver and defendant Miles were subsequently arrested for criminal possession of a controlled substance in the seventh degree.
*569 Conclusions of Law
I. Impoundment and Inventory Search of a Car
In People v Gonzalez (62 NY2d 386 [1984]), the New York Court of Appeals affirmed that the police are permitted to conduct a noninvestigative inventory search of a car that is lawfully in government custody. While a car is in lawful custody, an inventory search is permitted to protect the owner’s property, to protect the police against false claims for missing property, and to protect the police from potential danger. (See People v Gonzalez, 62 NY2d at 389; see also South Dakota v Opperman, 428 US 364 [1976]; Florida v Wells, 495 US 1 [1990]; People v Johnson, 1 NY3d 252, 256 [2003]; People v Galak, 80 NY2d 715, 716 [1993].) When performed, an inventory search must be conducted according to “ ‘an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably.’ ” (People v Johnson, 1 NY3d at 256 [citation omitted]; see Florida v Wells, 495 US at 4; People v Acevedo-Sanchez, 212 AD2d 1023 [4th Dept 1995].)
To survive Fourth Amendment scrutiny, then, an inventory search of an automobile must pass a two-prong test: (1) the car’s impoundment must be lawful, and (2) the inventory search must be conducted according to legally valid procedures. The inventory search of the car in this action fails in both respects.
A. The Impoundment of the Automobile
Whether a car is lawfully impounded is a legally distinct question from whether an inventory search is lawfully conducted because only a lawfully impounded car can be subjected to an inventory search. (See South Dakota v Opperman, 428 US at 368; United States v Duguay, 93 F3d 346, 351 [7th Cir 1996]; People v Rhodes, NYLJ, Apr. 8,1997, at 35, col 6 [Sup Ct, Queens County].) The Fourth Amendment’s proscription against unreasonable seizures prohibits the police from impounding a car solely because the driver or passenger is arrested.[1] (See United States v Duguay, 93 F3d at 353; People v Rhodes, NYLJ, Apr. 8, *570 1997, at 35, col 6.) Rather, the lawfulness of a car impoundment depends on the lawfulness of the arrest; as well as “the totality of the circumstances relating to the vehicle itself, including its condition and location at the time of the arrest and the presence of other persons to whom the driver may wish to entrust it.” (People v Rhodes, NYLJ, Apr. 8, 1997, at 35, col 6 [Sup Ct, Queens County]; see People v Johnson, (254 AD2d 500, 500-501 [2d Dept 1998], lv denied 93 NY2d 972 [1999]; People v Revander, 254 AD2d 625, 625-626 [3d Dept 1998], lv denied 92 NY2d 1053 [1999].)
New York courts have held that police may lawfully impound a car only in carefully circumscribed circumstances. Impoundments are lawful, for example, where there is a reasonable basis to believe the car was used in the commission of a crime (see, e.g., People v Hutson, 270 AD2d 45 [1st Dept 2000], lv denied 95 NY2d 854 [2000]); where the car is unregistered, uninsured, or uninspected (see, e.g., People v Marasa, 284 AD2d 971 [4th Dept 2001], lv denied 96 NY2d 940 [2001]); where a car is abandoned or illegally parked and presents an impediment to traffic (see, e.g., People v Hanks, 275 AD2d 1008 [4th Dept 2000], lv denied 95 NY2d 964 [2000]); where the car is reported or appears to be stolen (see, e.g., People v Grear, 232 AD2d 578 [2d Dept 1996], lv denied 89 NY2d 923 [1996]); where a car is involved in a fatal automobile accident (see, e.g., People v Quackenbush, 88 NY2d 534 [1996]); or where the car is driven by an unlicensed driver, and there is no one present who is legally able to drive the car (see, e.g., People v Johnson, 298 AD2d 281 [1st Dept 2002], revd on other grounds 1 NY3d 252 [2003]; People v Buckmon, 293 AD2d 623 [2d Dept 2002], lv denied 98 NY2d 729 [2002]; People v Mendez, 239 AD2d 945 [4th Dept 1997], lv denied 90 NY2d 895 [1997]; People v Clark, 210 AD2d 701 [3d Dept 1994]).
In short, a decision to impound the car is reasonable where there is a legitimate reason to move the car, there is a legitimate reason to detain the car for further investigation, or there is not another person present who can drive the car away safely. Stated differently: “The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots.” (United States v Duguay, 93 F3d at 353.)
*571 None of the exigent circumstances described above, let alone any other exigent circumstances that would justify a car’s impoundment, exist in this case. Neither the driver, defendant Miles, nor the car in which they were found was suspected of being involved in a crime. Neither the driver nor defendant Miles possessed any contraband. There was no evidence that the driver or defendant Miles did not have permission to have the car. There was no evidence that the car was not properly registered, properly insured, or properly inspected.
Moreover, there was no evidence that defendant Miles, who was initially cited for failure to use a passenger seat belt, did not have a valid operator’s license. There was no evidence that defendant Miles was unable to drive the car away safely after the driver was arrested for aggravated unlicensed operation of a motor vehicle in the third degree. Indeed, there was no evidence that either Officer Potluck or Officer Ferro made any inquiries to determine whether defendant Miles, not to mention any other authorized individual, could lawfully drive the car away following the driver’s arrest. To the contrary, Officer Potluck testified that he never asked the driver or defendant Miles whether anyone else could pick up the vehicle. (See hearing transcript, Oct. 6, 2003, at 19.)
Accordingly, it is manifest that under the totality of the circumstances, the People have failed to meet their burden of showing that the impoundment of the automobile in which defendant was a passenger was lawful. (See United States v Duguay, 93 F3d at 353 [impoundment not lawful where defendant’s girlfriend or brother was present and could have driven away the car]; People v Rhodes, NYLJ, Apr. 8, 1997, at 35, col 6 [impoundment was lawful because defendant’s car was illegally parked; had it been legally parked, impoundment would have been unlawful].)
B. The Inventory Search of the Automobile
Even where an automobile’s impoundment is lawful, the evidence seized during an inventory search is admissible at trial only if the inventory search was conducted according to “standardized criteria ... or established routine” procedures. (Florida v Wells, 495 US at 4; see People v Johnson, 1 NY3d at 256.) Further, the standardized procedures that are followed must be rationally designed to meet the objectives that justify the search and limit the discretion of the police officer conducting the search. (See People v Johnson, 1 NY3d at 256.) The prosecution has the burden of demonstrating that the inventory search *572 procedures are rational and that they ¡were properly followed. (See People v Johnson, 1 NY3d at 256; People v Bookless, 120 AD2d 950, 951 [4th Dept 1986], lv denied 68 NY2d 767 [1986].)
On direct examination, Officer Potluck testified that after the driver and defendant Miles were removed from the car, he conducted an inventory search of the vehicle. (See hearing transcript, Oct. 6, 2003, at 6.) The ¡prosecution, however, introduced ño evidence whatsoever regarding the routine or standardized procedures, if any, that govern Rochester Police Department inventory searches, whether Officer Potluck followed RPD procedures, or the procedures followed by Officer Potluck when he conducted the inventory search.[2] Given the prosecution’s failure to produce such evidence, the items seized as a result of the inventory search must be suppressed. (See People v Johnson, 1 NY3d at 256.)
II. Defendant Miles’ Statements
Defendant Miles also moves to suppress the statements he made to the police regarding the cocaine] Based on the unrefuted evidence, this component of defendant’s motion can be decided in short shrift.
Before asking defendant Miles about the cocaine found in the car, Officer Potluck “removed” him from the car, patfrisked him, and “secured” him in the back of his police patrol car. Both Officer Potluck and Officer Ferro testified that defendant Miles was not free to leave. (See hearing transcript, Oct. 6, 2003, at 16, 30.) After discovering the cocaine, Officer Potluck asked defendant Miles if he knew anything about it. No Miranda warnings were given to defendant Miles before Officer Potluck questioned him. ¡
It is black letter constitutional law that, once a person is taken into custody, the police cannot question him or her about an alleged crime until they give him or her proper Miranda warnings. (See Dickerson v United States, 530 US 428, 435 [2000]; Miranda v Arizona, 384 US 436, 478-479 [1966].) It is also black letter constitutional law that a person is in police *573 custody if he or she is in the presence and control of the police and is not free to leave. (See People v Yukl, 25 NY2d 585, 588-589 [1969], cert denied 400 US 851 [1970].)
In this action, both Officer Potluck and Officer Ferro testified that, having “secured” him in the back of their patrol car, defendant Miles was not free to leave. Before questioning him about the alleged crime, then, the police were constitutionally obligated to give him Miranda warnings. Because they did not do so, defendant Miles’ statements regarding the cocaine, made in response to the police officers’ questions, must be suppressed. (See People v Bookless, 120 AD2d at 951; People v Parks, 120 AD2d 920, 921 [4th Dept 1986], lv denied 67 NY2d 1055 [1986].)
Conclusion
For the foregoing reasons, defendant Miles’ motion to suppress the items seized as a result of the inventory search of the car in which he was a passenger is granted. His motion to suppress the statements he made to the police after he was taken into custody is granted.

. Under Vehicle and Traffic Law § 511-b, the police are required to impound a car where the driver is arrested for aggravated unlicensed operation of a motor vehicle in the second degree pursuant to Vehicle and Traffic Law § 511 (2). It is undisputed that the driver in this case was arrested for aggravated unlicensed operation of a motor vehicle in the third degree, for which there is no concomitant statutory impoundment obligation. Accordingly, the court has no occasion to determine whether a car’s impoundment pursuant to Vehicle and Traffic Law § 511-b is constitutional in the absence of probable cause or other indicia demonstrating a constitutionally reasonable basis to do so. (See United States v Duguay, 93 F3d at 353 [“The policy of impounding (a) *570 car without regard to whether the defendant can provide for its removal is patently unreasonable if the ostensible purpose for the impoundment is for ‘caretaking’ of the streets”].)

. Without explaining the policy, Officer Potluck testified on cross-examination that he followed “our department’s policy” when he decided to tow the car. Officer Potluck also testified on cross-examination that he filled out a “tow slip” after conducting the inventory search. Neither the RPD’s towing policy nor the “tow slip,” not to mention any RPD inventory search policy or procedures, was introduced into evidence. (See hearing transcript, Oct. 6, 2003, at 18-19.)