OPINION OF THE COURT
Gregory Carro, J.
The defendants are charged with criminal possession of a weapon in the second degree (Penal Law § 265.03 [2]). In an omnibus motion served and filed in Part 82, each moved to suppress the guns which were recovered from the glove compartment of the car that they were occupying or, in the alternative, for a Mapp hearing. The motions were granted to the extent of ordering a joint Mapp hearing. The matter was sent to Part 42 for the hearing, which the court conducted on December 1, 2005.
The only witness at the hearing was Police Officer Daniel Keane who testified for the People. Based on his testimony, the court makes the following findings of fact and conclusions of law:
Findings of Fact
On June 8, 2005 Police Officer Keane, his partner, Police Officer Tobon, and Sergeant Anzelino were on anticrime patrol in plain clothes in an unmarked car within the boundaries of the 25th Precinct. At approximately 5:30 p.m., as the unmarked car was facing north on the east side of Fifth Avenue at the intersection of 138th Street, Officer Keane noticed a 2002 Impala similar to his own police vehicle with excessively tinted windows and an antenna on the roof. The Impala made a 180 degree turn eastward onto Fifth Avenue from the bridge without signaling.
Officer Keane did a computer check on the Impala’s license plate and learned that it was not a New York Police Department vehicle. He then stopped it and approached on the driver’s side where Kendall Francis was seated. The codefendant, Arthur Thomason, was seated next to Mr. Francis.
Officer Keane told Mr. Francis why he was being stopped, then asked for his driver’s license and registration, which Mr. Francis produced. The officer took the license back to his car and did a computer check which disclosed that the license had been suspended. Officer Keane returned to the Impala and asked Mr. Francis for the keys to the car, which Mr. Francis surrendered. Officer Keane placed Mr. Francis under arrest. Because he decided to voucher the car, the officer then asked Mr. Thomason to exit. Mr. Thomason complied.
*783 Officer Keane asked Mr. Thomason for identification so he could complete a “UF 250 Stop, Question and Frisk” form. Mr. Thomason produced his license, which Officer Keane checked for outstanding warrants. The result, which was negative for warrants, also indicated that the license was valid.
While Officer Tobon guarded Mr. Francis and Officer Keane sat in the unmarked car preparing the “UF 250,” Sergeant Anzelino did an inventory search of the empty Impala to remove anything dangerous before it was transported to the precinct and to document its contents. According to Officer Keane, the sergeant was following police policy which required vouchering, then searching, before a vehicle whose driver was arrested for driving with a suspended license was brought to the precinct. Supervisors at the precinct would then decide whether to release the car or retain it.
Officer Keane glanced up from his paper work and saw the sergeant place handcuffs on Mr. Thomason. The sergeant informed Officer Keane that he found two loaded 9 millimeter guns in the glove compartment, which was unlocked. Sergeant Anzelino removed the ammunition from the guns and gave them to Officer Keane to voucher. In addition, the sergeant recovered two Sprint Trio Palm Pilot phones, currency and other documents from the car.
Conclusions of Law
On a motion to suppress physical evidence, the People have the burden of going forward to show the legality of police conduct in the first instance. Once they have made this showing, the defendant bears the ultimate burden of proving that the conduct was illegal (People v Berrios, 28 NY2d 361 [1971]).
In determining whether the People have satisfied their burden, the court must examine the police conduct and the attendant circumstances under a reasonableness standard (People v Cantor, 36 NY2d 106 [1975]). “The reasonableness standard contemplates and permits a flexible set of escalating police responses, provided only that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds” (People v Finlayson, 76 AD2d 670, 675 [2d Dept 1980]). The analysis focuses on “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place” (Terry v Ohio, 392 US 1, 20 [1968]).
*784 The first intrusive action taken by police officers in this case was the stop of the defendants’ automobile.
A police officer may stop a moving vehicle if he at least reasonably suspects that the occupants had been, are then, or are about to be engaged in conduct in violation of the law (People v Spencer, 84 NY2d 749 [1995]; People v Sobotker, 43 NY2d 559, 563 [1978]). Violations of the Vehicle and Traffic Law observed by the police are a sufficient basis for the stop of a moving vehicle (People v Robinson, 97 NY2d 341 [2001]; People v Ingle, 36 NY2d 413 [1975]).
In this case, Police Officer Keane saw the Impala make a turn without signaling in violation of Vehicle and Traffic Law §§ 1163 and 1164. In addition, the Impala’s windows were excessively tinted in violation of Vehicle and Traffic Law § 375 (12-a) (b). Since either of these two violations of the Vehicle and Traffic Law would independently justify the stop, the stop was valid.
Once the vehicle was stopped for violations of the Vehicle and Traffic Law, the police were entitled to request the operator’s driver’s license and registration (Pennsylvania v Mimms, 434 US 106 [1977]; People v Sobotker, 43 NY2d 559, 563 [1978], supra; People v Ingle, 36 NY2d 413 [1975], supra). The computer check on those documents, which revealed that Francis was driving with a suspended license, generated probable cause to arrest him for operation of a motor vehicle while the registration or privilege is suspended or revoked, an unclassified misdemeanor under Vehicle and Traffic Law § 512. The officers’ action with respect to the passenger was also lawful. As a safety precaution, the police may order a passenger out of an automobile during a stop for a traffic violation (People v Robinson, 74 NY2d 773, 775 [1989]).
The officers next impounded the vehicle by obtaining the keys, and conducted an inventory search.
A car that is lawfully in police custody is subject to a routine inventory search to catalogue its contents (People v Johnson, 1 NY3d 252, 256 [2003]). The purposes of an inventory search are to protect the owner’s property, and to protect the police against false claims for missing property, and from possible danger posed by weapons and other contraband (People v Johnson, 298 AD2d 281 [2002], revd on other grounds 1 NY3d 252 [2003]; People v Gonzalez, 62 NY2d 386, 389 [1984]). To ensure that an inventory search is not a ruse for general rummaging in order to discover incriminating evidence, it must follow “an established procedure clearly limiting the conduct of individual officers that *785 assures that the searches are carried, out consistently and reasonably” (People v Galak, 80 NY2d 715, 719 [1993]). In determining whether tangible property was lawfully seized during an inventory search, the court must first decide the distinct, though overlapping, issue whether the police had the authority to impound the car (South Dakota v Opperman, 428 US 364 [1976]; People v Quackenbush, 88 NY2d 534, 539 [1996]).
An inventory search is unlawful if the arrest is unlawful. However, the lawful arrest of the driver by itself does not justify impoundment. Impoundment violates the Fourth Amendment unless it is supported by probable cause to believe that the car is connected to criminal activity or it furthers police “community caretaking functions” such as safeguarding the streets from traffic congestion, parking violations or road hazards (South Dakota v Opperman, 428 US 364, 368 [1976], supra). Valid reasons for impounding a vehicle include a reasonable basis to believe that the car itself is evidence of a crime, the car cannot be operated because it is unregistered, uninsured or uninspected, the car was involved in a fatal automobile accident, or the car was driven by an unlicensed driver or a driver whose license is suspended and there is no one who is legally able to drive the car (People v Johnson, 298 AD2d 281 [2002], supra).
In this case the People failed to establish a valid reason for impoundment. There was no testimony that the car was linked to criminality or that it was involved in an accident. Moreover, since Officer Keane testified that Francis produced proof of registration and insurance, and, under questioning by the court, also admitted that Thomason had a valid driver’s license, the record precludes any finding that there was no one legally able to remove the car from the street. Impoundment, therefore, was not an exercise of police “community caretaking functions.” Absent any justification for impounding this vehicle, the People have not satisfied their initial burden of showing that impoundment was lawful.
Moreover, the prosecutor failed to adduce any evidence at the hearing that the inventory search was conducted pursuant to “an established procedure clearly limiting the conduct of individual officers that assures that the searches are carried out consistently and reasonably” (People v Galak, 80 NY2d 715, 719 [1993], supra). Officer Keane demonstrated his knowledge of the general objectives of an inventory search. However, the hearing record contains no evidence regarding department procedures limiting the discretion of individual officers and as *786 suring that searches are conducted consistently and reasonably. In fact it can be reasonably inferred from Officer Keane’s testimony that police department policy allows impoundment, which Officer Keane confused with “vouchering,” and an inventory search of a vehicle in the field whenever the driver is arrested for driving with a suspended license. Such a policy, which would permit, if not encourage, general rummaging for evidence, does not satisfy constitutional requirements.
For these reasons, the court concludes that the People have not satisfied their initial burden of going forward to show that the inventory search was justified. Given this conclusion, the motions to suppress tangible property must be granted and the guns recovered from the Impala suppressed.