OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
At issue in this action is whether a municipal ordinance that authorizes the police to impound a vehicle when the driver is cited for a minor traffic infraction is delimited by the constitutional proscription against unreasonable searches and seizures. This constitutional issue, one of first impression in New York, arises because defendant was charged with the prohibited possession of a weapon the police found in the trunk of his car after he was ticketed for driving a car with excessive sound and a broken tail lamp. The sole authority for the search of defendant’s car was the city’s ordinance.
Defendant has moved to suppress the weapon that was seized from his automobile. The People oppose his motion. The court conducted a pretrial hearing on September 4, 2008. Rochester Police Officer William Mason testified for the People. Defendant offered no witnesses or evidence.
At the conclusion of the hearing, the court invited both parties and the City of Rochester Corporation Counsel’s office to submit legal arguments. Having considered the credible testimony, the written submissions, and applicable legal authority, the court makes the following findings of fact and conclusions of law.
Findings of Fact
On June 2, 2008, at approximately 10:45 p.m., Rochester Police Officer William Mason was standing outside his patrol car near 723 Frost Avenue in Rochester, New York. While there, Officer Mason heard loud music blaring from a 2003 blue Saab that was driving down the street towards him. As the car passed his patrol car, Officer Mason also noticed that a taillight was out.
*472 Officer Mason and his partner entered their patrol car, sped up to the Saab, flashed their emergency lights, and pulled the Saab over to a stop. Officer Mason approached the driver, defendant Jerry Iverson. At the officer’s request, defendant produced his driver’s license and vehicle registration card. Officer Mason asked defendant whether he was familiar with Rochester’s excessive vehicle sound ordinance. Defendant responded that he was, and remarked that when he passed the officer’s patrol car, he turned down the music’s volume.
Throughout his encounter with the police, defendant was cooperative. Nothing about the situation or defendant’s behavior caused Officer Mason to suspect that defendant was engaged in any criminal activity or that any exigent circumstances existed. At no time during his interactions with defendant was Officer Mason concerned for his safety. After talking to defendant and reviewing his driver’s license and vehicle registration card, Officer Mason issued two appearance traffic tickets to defendant, one for a violation of Rochester’s excessive vehicle sound ordinance, Code of the City of Rochester (Rochester City Code § 75-12 [A]), and another for a violation of New York State’s vehicle rear light statute (Vehicle and Traffic Law § 375 [2] [a] [3]).
Officer Mason then asked defendant to exit his car and sit in the back of his patrol car while defendant’s car was searched and towed. Defendant was not under custodial arrest at that time, and the officer had no intention of taking defendant into custody. Rather, Officer Mason concluded that he was required to tow defendant’s car because Rochester’s City Code mandates the impoundment of a vehicle when its driver is cited for violating the city’s excessive vehicle sound ordinance.
Specifically, Rochester City Code § 75-12 (C) provides, in pertinent part: “Any motor vehicle used in connection with the commission of a violation of this [excessive vehicle sound] section shall be towed in accordance with section 111-75 of the Municipal Code.” Section 111-75 (C) (1) in turn provides: “Any motor vehicle which has been or is being used in connection with the commission of a violation of . . . [section] 75-12 of the Municipal Code (Sound reproduction devices used for miscellaneous purposes) . . . shall be subject to towing and impoundment under this section.”
Before it was towed, Officer Mason and his partner conducted an inventory search of defendant’s car. The search was conducted in accordance with the City of Rochester’s policies *473 and procedures for an inventory search of a vehicle. According to Officer Mason:
“If you are towing the vehicle you are supposed to conduct a complete inventory search of the car so anything that’s valuable in the car you are supposed to take the property and either turn it into our property clerk’s office for safe keeping or if for some reason the individual wasn’t going to jail, you could turn that property over to them. But you document it on a property sheet that the property has been turned over to them. As part of the search you are supposed to check not only the trunk but also under the hood of the car as well.” (Hearing transcript at 11.)
During the inventory search, the police found a loaded shotgun and extra ammunition in the trunk of defendant’s car. Defendant was then arrested, taken into custody, and charged with the prohibited possession of a firearm under Environmental Conservation Law § 11-0931 (2).
Conclusions of Law
There is no dispute that the initial stop of defendant’s car was lawful. Having a reasonable basis to believe that the loud music emanating from defendant’s car violated Rochester’s excessive vehicle sound ordinance, and seeing the car’s burnt-out taillight, Officer Mason was legally authorized to stop defendant. (See People v Robinson, 97 NY2d 341, 348-349 [2001]; People v Frazier, 52 AD3d 1317 [4th Dept 2008], lv denied 11 NY3d 788 [2008].) Officer Mason also acted properly when he asked defendant to step out of his vehicle and wait in the police car. (See People v Robinson, 74 NY2d 773, 774-775 [1989], cert denied 493 US 966 [1989]; People v Dunnigan, 1 AD3d 930, 932 [4th Dept 2003], lv denied 1 NY3d 627 [2004].)
Defendant’s objections focus solely on the subsequent search of his car. He contends that the search violated his rights under the Fourth Amendment to the United States Constitution and under article I, § 12 of the New York Constitution. Both constitutional provisions prohibit the police from conducting unreasonable searches and seizures.[1] He also argues that Rochester Municipal Code § 75-12 (C) is unconstitutional insofar as it authorized the police to search his car.
*474 By its terms, section 75-12 (C) does not expressly authorize the search of a vehicle; rather, it mandates only the towing and impoundment of a vehicle. But the United States Supreme Court has clarified that when the police tow and impound a vehicle, they are permitted to conduct an inventory search of the vehicle as long as they do so in accordance with constitutionally proper procedures. (See South Dakota v Opperman, 428 US 364, 372 [1976]; People v Johnson, 1 NY3d 252, 256-257 [2003].) Properly conducted inventory searches are allowed to protect the driver’s property while the car is held by the police, to protect the police against claims of missing property, and to protect the police from any danger. (See South Dakota v Opperman, 428 US at 369; People v Johnson, 1 NY3d at 256.) Consequently, if the police are legally authorized to tow and impound a vehicle, they are entitled to conduct a proper inventory search of it. (See People v Johnson, 1 NY3d at 256.)* [2]
The right of the police to seize a vehicle in the first instance, however, is itself subject to constitutional scrutiny. (See United States v Duguay, 93 F3d 346, 351 [7th Cir 1996], reh denied 165 F3d 33 [7th Cir 1998], cert denied 526 US 1029 [1999].) Absent a search warrant, the police may constitutionally impound a vehicle only where probable cause of criminality exists, or where the vehicle’s seizure serves a valid “community caretaking” function. (See South Dakota v Opperman, 428 US at 368-370; United States v Caseres, 533 F3d 1064, 1074-1075 [9th Cir 2008]; United States v Duguay, 93 F3d at 352.) A constitutionally reasonable community caretaking purpose exists when impoundment of a vehicle is necessary to remove it from its location because not to do so would jeopardize public safety or impede the efficient movement of traffic. (See South Dakota v Opperman, 428 US at 368-369; United States v Duguay, 93 F3d at 352.) Where an authorized person is available to drive the vehicle away legally, impoundment of the vehicle fails to serve a constitutionally legitimate community caretaking objective. (See United States v Caseres, 533 F3d at 1074-1075; United States v Duguay, 93 F3d at 352; People v Miles, 3 Misc 3d 566, 571 [Rochester City Ct 2003].)
*475 In New York, for example, courts have held that a vehicle’s impoundment serves a valid community caretaking function, and is therefore constitutionally reasonable, where the defendant does not have a valid driver’s license and no one else who can drive the car is present (see e.g. People v Wilburn, 50 AD3d 1617, 1618 [4th Dept 2008], lv denied 11 NY3d 742 [2008]; People v Buckmon, 293 AD2d 623 [3d Dept 2002], Iv denied 98 NY2d 729 [2002]; People v Mendez, 239 AD2d 945 [4th Dept 1997], lv denied 90 NY 895 [1997]); where the vehicle is unregistered, uninsured or uninspected (see e.g. People v Marasa, 284 AD2d 971 [4th Dept 2001], lv denied 96 NY2d 940 [2001]); where a car is abandoned or illegally parked and impedes traffic (see e.g. People v Hanks, 275 AD2d 1008 [4th Dept 2000], lv denied 95 NY2d 964 [2000]); or where the car is involved in a personal injury accident (see e.g. People v Quackenbush, 88 NY2d 534, 539 [1996]). On the other hand, where a properly insured and registered car is legally parked near the owner’s house, as in People v Richards (14 Misc 3d 1235[A], 2007 NY Slip Op 50309[U] [Nassau Dist Ct 2007]), where the licensed passenger of the unlicensed driver is available to drive the car, as in People v Francis (12 Misc 3d 781, 785 [Sup Ct, NY County 2006]) and People v Miles (3 Misc 3d 566, 571 [2003]), or where the automobile’s licensed owner is present to drive the car, as in People v Confessore (12 Misc 3d 1192[A], 2006 NY Slip Op 51537[U] [Nassau Dist Ct 2006]), the vehicle’s impoundment is unreasonable and unlawful.
In short, other than in the context of a criminal investigation, there are two prerequisites for a constitutionally reasonable vehicle impoundment: (1) the need to remove the vehicle to further public safety or the unimpeded flow of traffic; and (2) the defendant’s inability to provide for the vehicle’s immediate and efficient removal. (See United States v Caseres, 533 F3d 1064, 1074-1075 [2008]; United States v Duguay, 93 F3d at 353-354.) Stated differently, “The decision to impound an automobile, unless it is supported by probable cause of criminal activity, is only valid if the arrestee is otherwise unable to provide for the speedy and efficient removal of the car from public thoroughfares or parking lots.” (United States v Duguay, 93 F3d at 353.)
None of the criteria that would evince the reasonableness of impounding defendant’s car was present in this case. Defendant did not display any suspicious behavior and no contraband was in open view. There was no evidence of criminal activity, there was no factual basis to suspect that there was a weapon in the *476 car that presented an actual danger to the police. (See People v Torres, 74 NY2d at 229-230.)
Nor was impoundment of defendant’s vehicle necessary to enhance public safety or to permit the unimpeded flow of traffic. After being ticketed for the two traffic infractions, defendant was not taken into physical custody. He possessed and showed the police officer his valid driver’s license and proof of registration. Defendant’s car was neither disabled nor impeding vehicular or pedestrian traffic. Defendant was physically capable of driving the car away. (See United States v Duguay, 93 F3d at 353.)
In sum, when the police officer stopped defendant for two traffic infractions, he had no basis to believe that either defendant or the vehicle was involved in criminal activity, and he had no constitutionally legitimate community caretaking reason to impound defendant’s car. The impoundment of defendant’s car was therefore unconstitutional. (See United States v Caseres, 533 F3d at 1074-1075 [absent a constitutionally legitimate community caretaking purpose, impoundment of defendant’s car violated the Fourth Amendment]; United States v Duguay, 93 F3d at 353; People v Miles, 3 Misc 3d at 571.)
The People rely on municipal law to justify the impoundment of defendant’s car in this case. According to the People, Rochester City Code § 75-12, which directs the police to impound a vehicle when its driver is ticketed for a violation of the city’s excessive vehicle sound ordinance, gave the police the legal authority to impound defendant’s car. Plainly, the police complied with the applicable city ordinance when they towed and impounded defendant’s car. As the Supreme Court has held in circumstances similar to this case, however, the existence of a statute does not transform an unconstitutional seizure into a constitutionally permissible seizure.
In Knowles v Iowa (525 US 113 [1998]), the police stopped defendant for a speeding infraction. The police issued an appearance citation to defendant, and did not take him into custody. However, in compliance with Iowa law that authorized the full scale search of a vehicle upon the issuance of a traffic infraction appearance ticket, the police searched defendant’s car. The search yielded a bag of marijuana and a pipe.
The Knowles Court held that under the circumstances, the search of defendant’s automobile violated the Fourth Amendment’s proscription against unreasonable searches. As explained by the Court, police are constitutionally entitled to search a de *477 fendant who is physically arrested to ensure that: (1) the defendant is taken into custody safely; and (2) evidence is preserved for later use at trial. (See Knowles v Iowa, 525 US at 116-117.) Neither purpose for a full blown search of a defendant’s vehicle exists, however, when a defendant is simply given a noncustodial appearance ticket. In reaching its conclusion, the Court held that insofar as Iowa’s law authorized the police to search defendant’s car, the law was unconstitutional as applied to defendant. (See Knowles v Iowa, 523 US at 116, 117; see also People v Galak, 80 NY2d 715, 718 [1993] [fact that a departmental procedure was followed does not render an unreasonable search constitutionally permissible].)
As in Knowles, the unconstitutional impoundment and concomitant search of defendant’s car in this case cannot be rendered constitutional by the existence of statutory authority. Accordingly, to the extent that Rochester City Code § 75-12 provided the sole authority for the police to impound defendant’s car, it is unconstitutional as applied to defendant. (See People v Williams, 145 Cal App 4th 756, 762-763, 52 Cal Rptr 162, 167 [2d Dist 2006] [state law authorizing a vehicle’s impoundment whenever the driver is taken into custody cannot validate an impoundment that does not serve a constitutionally valid community caretaking function]; People v McFarland, Sup Ct, Monroe County, Aug. 26, 2003, Fisher, J. [police search of defendant’s car, authorized by Rochester City Code § 75-12, was unconstitutional where defendant was not taken into physical custody after being stopped for a violation of Rochester’s excessive vehicle sound ordinance].)
Conclusion
For the reasons discussed above, the impoundment and concomitant search of defendant’s automobile, conducted without probable cause or a constitutionally permissible community caretaking purpose, violated the New York State and United States Constitutions. Rochester City Code § 75-12 is unconstitutional insofar as it authorized the impoundment of defendant’s automobile in this case. The evidence seized as a result of the unlawful seizure and search of defendant’s automobile must therefore be suppressed.

. The New York Court of Appeals has emphasized that although the unreasonable search and seizure provisions of the New York State and United States Constitutions use identical language, New York Constitution, article I, *474 § 12 affords, at times, greater protections than those provided by the Fourth Amendment. (See People v Robinson, 97 NY2d at 350.)

. People v Torres (74 NY2d 224, 229-231 [1989]), which held that the New York State Constitution prohibits the police from searching a stopped vehicle in the absence of probable cause or actual danger to police safety, did not involve an inventory search.