THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH SEIBECH, Defendant-Appellant.
Third District    No. 3—85—0298

Opinion filed February 14, 1986.—Rehearing denied March 25, 1986.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Marc P. Bernabei, State's Attorney, of Princeton (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant was found guilty by a jury of the offenses of unlawful use of weapons and failure to possess a firearm owner's identification card (Ill. Rev. Stat. 1983, ch. 38, pars. 24—1(a)(4), 83—2). The court imposed a sentence of six months' imprisonment on each charge to run concurrently. The defendant's post-trial motion was denied, and the defendant filed a timely notice of appeal. We reverse.

The defendant argues that the State did not prove him guilty beyond a reasonable doubt. We agree. The defendant also contends that he was denied a fair trial as a result of repeated prosecutorial misconduct. Since we agree with the defendant's contention that he was not proved guilty beyond a reasonable doubt, we need not address defendant's claim of prosecutorial misconduct.

The record discloses that the following was adduced at the defendant's trial. The first witness to testify for the prosecution was Officer David M. Grubb of the Illinois State Police.

Officer Grubb stated that on the morning of September 24, 1984, he stopped the defendant's car for a speeding violation. Officer Grubb walked to the defendant's car and saw a cased firearm lying on the floor in the rear of the car. Describing what happened next, Officer Grubb testified, "I asked him [the defendant] if I could look at the firearms and he said that's no problem. The gun doesn't belong to him anyway." Officer Grubb removed the firearm from its case and

removed nine .22-caliber bullets from it. Officer then asked the defendant if he had a firearm owner's identification card. The defendant was arrested when he was unable to produce such a card. At the conclusion of Grubb's testimony, the State rested.

The first witness to testify for the defense was the defendant. He stated that on the morning of September 24, 1984, he picked up Rick Yuvan and Bob Wrona and drove them to an area where Yuvan and Wrona hunted. The defendant stated that Yuvan and Wrona each had a rifle when he picked them up and that he saw them each take his own gun when the defendant dropped them off to hunt. The defendant picked Yuvan and Wrona up again after the two had hunted for several hours. Yuvan placed his cased .22-caliber rifle in the back of the defendant's car and sat down on the passenger side of the front seat next to the defendant. Wrona also placed his rifle in the back and seated himself on the passenger side of the back seat. The defendant testified that after picking Yuvan and Wrona up from hunting, he first took Wrona home and that he saw Wrona take a gun when getting out of the car. After dropping off Wrona, the defendant drove to Yuvan's apartment. Because he was in a hurry, the defendant stopped in the middle of the street in front of Yuvan's apartment to let him off. The defendant testified that because he was in the middle of the street, he was looking in the rear-view mirror for traffic and was not watching Yuvan get out of the car. Thus, he did not see whether Yuvan took his gun from the back of the car. The defendant stated that as he drove away he saw Yuvan on the steps of the apartment building but did not notice whether Yuvan was carrying a gun. The defendant stated that after he dropped Yuvan off he was unaware that Yuvan's rifle was still in his car.

After dropping off Yuvan, the defendant drove to the Princeton courthouse. However, in getting in and out of his car, he did not look into the back of his car and so did not see a rifle in the car. Soon after leaving the courthouse, the defendant was stopped by Officer Grubb. When Officer Grubb asked the defendant if he could look at a gun in the defendant's car, the defendant said he could. The defendant stated that when Officer Grubb first mentioned the gun, the defendant was unaware to whom it belonged, but he did not act surprised since he realized that either Yuvan or Wrona had left a gun in the car, they being the only two who had guns in the car that day. After Officer Grubb removed the rifle, the defendant recognized it as belonging to Yuvan. The defendant stated that between the time he dropped Yuvan off and the time he was stopped by Officer Grubb, he was unaware that there was a gun in his car.

Richard Yuvan testified that on the morning of September 24, 1984, the defendant drove him and Wrona to where they hunted, and that they were picked up by the defendant after hunting. The defendant then drove Wrona home and drove Yuvan to his apartment. When Yuvan was being dropped at his apartment, he got out of the car quickly because the defendant was in a hurry to get to court, and in his haste Yuvan forgot his gun. Yuvan identified the rifle found in the defendant's car as belonging to him.

■ With respect to the unlawful use of weapon's charge, the relevant section of the Criminal Code of 1961 reads as follows:

"(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver, stun gun or taser or other firearm." (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(a)(4).)

It is apparent from reading section 24—1(a)(4) that in order to obtain a conviction, the State must prove that the defendant knowingly possessed a firearm. In order to legally transport a firearm, a person must either break down the firearm to a nonfunctioning condition or place it where it is not immediately accessible. (Ill. Rev. Stat. 1983, ch. 38, par. 24—2(b)(4).) On appeal, the defendant argues that the State failed to establish beyond a reasonable doubt, that the defendant's possession of the gun found in his car was knowing.

■ Knowledge on the part of an accused of the existence of a firearm within his possession may be inferred from circumstantial evidence. (*People v. Billings* (1977), 52 Ill. App. 3d 414.) The State urges that we infer that the defendant knowingly possessed a firearm. The State's entire case rests upon the inference to be drawn from the testimony of Officer Grubb that the defendant knowingly possessed a firearm. Officer Grubb testified that as he stood outside the defendant's vehicle on the driver's side, he could readily see the firearm. Officer Grubb's testimony located the firearm on the floor behind the driver's seat with the barrel resting on the middle hump of the floor facing at an upward angle toward the passenger. The barrel was less than 24 inches from the front seat. There was further testimony that the defendant could have easily reached the firearm from the driver's seat. On appeal, the State cites *People v. Rogers* (1974), 18 Ill. App. 3d 940. In *Rogers*, the defendant was charged with unlawful use of weapons as the result of a police officer's discovery, following a traffic stop, of a .12-gauge sawed-off shotgun partially concealed beneath the

rear seat. When stopped, the defendant admitted he had title to the automobile. During trial, the arresting officer testified that the firearm was visible from his position outside the car. The *Rogers* court held that the defendant's ownership of an automobile, his presence within it and the partial visibility of a firearm from outside the car was sufficient to establish that the defendant had knowledge of the firearm's presence. (18 Ill. App. 3d 940, 944.) The State maintains that we follow *Rogers* and infer that this defendant had knowledge of the rifle's presence, irrespective of how it came into his presence. While ordinarily one driving his own car with a firearm in it would be presumed to have knowing possession of a firearm, this presumption may be rebutted. In the case at hand, the unrebutted defense testimony on this point effectively rebutted the State's evidence.

While a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses, where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded by a jury. (*People v. Ellis* (1982), 107 Ill. App. 3d 603, 610.) The defendant insisted that he did not know the rifle was in his car. The testimony of Rick Yuvan corroborated the defendant's account of how the rifle came into his possession. Yuvan testified that on the day of the defendant's arrest he had inadvertently left his gun on the floor in the back of the defendant's car. Yuvan's testimony presented a plausible explanation of why there was a firearm in the defendant's car. The State presented no evidence to indicate that Yuvan was not in the defendant's car on the morning of September 24, 1984. Nor did the State contradict Yuvan's statement that he had forgotten to take his rifle from the defendant's car. Accordingly, Yuvan's testimony could not reasonably be disregarded by the jury.

The circumstantial evidence, considered along with all of the other evidence in the case, fails to persuade that the defendant knowingly possessed a firearm. The fact that the firearm was visible to Officer Grubb does not lead to the inescapable conclusion that the defendant must have seen the weapon when entering or leaving the car to attend court. It is interesting to note that Officer Grubb testified the firearm rested at an upward angle on the middle hump. Both the defendant and Rick Yuvan testified that the defendant's car has a flat floor with no hump. It is also interesting to note that the arresting report places the firearm on the rear seat. Officer Grubb was the only officer at the scene and the only one who participated in the ar-

rest. The first sentence of the report reads, "Vehicle stopped for speeding, loaded weapon observed on rear seat." The report was based on information conveyed by Officer Grubb to a sergeant. During cross-examination, Officer Grubb speculated that the sergeant must have been mistaken in reporting the weapon's location. Officer Grubb testified that only the information up to "vehicle stopped for speeding" came from him. In light of the uncontradicted testimony of Rick Yuvan and the tenuous nature of the inference which was rebutted by defendant's evidence, it cannot be said that the State established beyond a reasonable doubt that the defendant knowingly possessed a firearm.

With respect to the offense of no firearm owner's identification card, the relevant section of the Criminal Code of 1961 provides:

> "(a) No person may acquire or possess any firearm or any firearm ammunition within this State without having in his possession a Firearm Owner's Identification Card ***." (Ill. Rev. Stat. 1983, ch. 38, par. 83—2(a).)

The defendant avers that in order to sustain a conviction for this offense the State must prove that the defendant knowingly possessed a firearm. The State initially questions whether a violation of section 83—2(a) requires proof of a specific mental state. Alternatively, they argue that even if a mental state is needed in order to sustain a conviction, the evidence presented at trial established that defendant knowingly possessed the rifle in his car without having the required firearm owner's identification card. Since we have already expressed our opinion with respect to whether the defendant knowingly possessed the firearm, we need only consider the State's strict liability argument.

■ In *People v. Crowder* (1972), 4 Ill. App. 3d 1079, the defendants were found guilty of the offenses of unlawful use of weapons and failure to possess a firearm owner's identification card. The *Crowder* court held that the mere presence of the defendants in the car, in and of itself, was not such a fact as to impute knowledge. Because of the tenuous nature of the circumstantial evidence, the court held the State did not prove beyond a reasonable doubt the offense of unlawful use of weapons. It then went on to note that the record did not support a finding that the defendant was guilty of the offense of failure to possess a firearm owner's identification card, which at the very least, the court held, would encompass proof that the defendant owned or possessed, either actually or constructively, the weapon in issue. (4 Ill. App. 3d 1079, 1082.) We conclude that knowledge of the presence of a weapon must be established before a person can be convicted for failure to possess a firearm owner's identification card.

Accordingly, defendant's convictions are reversed for failure of the State to prove defendant guilty beyond a reasonable doubt.

Reversed.

BARRY and STOUDER, JJ., concur.