THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES J. STACK, a/k/a Alexander Nathan Fuller, Defendant-Appellant.

Fourth District   No. 4—92—0531

Argued March 23, 1993.—Opinion filed May 6, 1993.

Daniel D. Yuhas and Jeffrey D. Foust (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On April 27, 1992, following a jury trial in the circuit court of McLean County, defendant James J. Stack was convicted of the offense of unlawful possession of weapons (ammunition) by a convicted felon. (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.1(a).) He was subsequently sentenced to a term of four years' imprisonment.

On appeal, defendant maintains (1) the trial court erred in denying his motion to suppress two bullets seized from his vehicle by a police officer; and (2) the State failed to prove beyond a reasonable doubt that he committed the offense of unlawful possession of weapons by a felon. We affirm.

At a hearing on the motion to suppress, Bloomington police officer James Sutherland testified as follows: (1) on December 6, 1991, he was involved in the arrest of defendant and searched defendant's vehicle "incident to the arrest"; (2) the driver's side door was open, the officer looked in the front passenger window, and he discovered a small container with binoculars, a "regular" binocular case, a police scanner and two .22 caliber bullets on the seat; (3) the bullets were on the left side of the seat toward the back; (4) he seized the bullets, because of the possibility that there might be a gun; (5) defendant's car was then towed to a secured lot; and (6) the inventory and tow were at the request of Officer Peter Avery, who made the arrest and left with defendant prior to the search. Sutherland testified that the reason he took charge of defendant's car after his arrest was because "that's normally the way the department does things. If one officer makes an arrest and is charged with the transportation of the defendant to the station, a second officer is called in to do an inventory search and do the tow."

Officer Avery testified at the suppression hearing as follows: (1) on December 6, 1991, he and another officer were patrolling in his squad car, when the driver of another car drove around him and signaled for them to stop; (2) a woman, D.S., got out of the car and told the officers that a man had been following her car, harassing her, and he threatened to kill her; (3) she said the car that the man had been driving had just pulled into the parking lot of a nearby apartment building; (4) defendant had pulled into the parking lot and stopped, but the car was not parked; (5) the officer drove to the back of that building and approached the car as defendant exited from the driver's side of the car and left the door open; and (6) defendant did not have a valid driver's license, and the car was not registered to him.

Avery further testified that (1) after conversing with defendant about D.S., and her reasons for wanting him arrested, Avery placed defendant under arrest and put him in the squad car; (2) he told Officer Sutherland to have the car towed, because (a) they could not "secure" the car in the unlocked area, *i.e.*, the parking lot of the apartment building and (b) the computer check had not shown defendant to be the registered owner; (3) the officers had no way to contact the registered owner to determine whether defendant had permission to possess the vehicle; and (4) defendant was initially arrested for disorderly conduct and driv-

ing with a suspended license. Avery testified that when they returned to the police station, a computer check revealed that defendant had a previous conviction in Texas for rape.

Defendant testified at the hearing that he told the police he had not been driving, but rather, a man named "Joe" had been driving and had left. He said he was being sarcastic in stating that someone else had been driving. He also stated that he did not, contrary to Avery's testimony, tell Officer Avery that he did not know the woman who had made the complaint. Defendant was not questioned as to whether he was aware the bullets were in his car, or if they belonged to him. In addition, the State did not question defendant about his prior conviction.

The court, in denying the motion to suppress, indicated the search could not be supported by the "plain view" exception, and it was not a search incident to arrest. The court concluded, however, that because there was no identification to show the vehicle belonged to defendant, and the officers did not know if defendant had rightful possession of the vehicle, it could not be left in a private parking lot. The court determined the officers had a right to take the vehicle into custody, and they had a right to inventory the vehicle. The court found the search was proper on that basis.

Defendant contends the trial court erred in denying his motion to suppress, because the police had no reason to believe the car defendant was driving had been stolen, the car was parked on private property, and the property owners had not requested that defendant's car be removed.

■ An "inventory search" of the contents of a car that has been impounded by the police has been upheld as part of what the Supreme Court has called "community caretaking functions." (*South Dakota v. Opperman* (1976), 428 U.S. 364, 368, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3097.) These searches are permitted without a warrant to serve three strong governmental interests: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; and (3) to protect the police from potential danger. *Opperman*, 428 U.S. at 369, 49 L. Ed. 2d at 1005, 96 S. Ct. at 3097.

The *Opperman* Court determined that an inventory search may be reasonable under the fourth amendment in light of the strong governmental interests and the diminished expectation of privacy in an automobile. The Court noted in *Colorado v. Bertine* (1987), 479 U.S. 367, 371-72, 93 L. Ed. 2d 739, 745-46, 107 S. Ct. 738, 741, that its previous cases accorded deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody. The

*Bertine* Court further noted that there was no showing the police had acted in bad faith or for the sole purpose of investigation.

We need not examine in further detail the application of the *Opperman* doctrine upon the facts here, nor do we need to examine the arguments presented by defendant to refute upholding the seizure of the bullets as the fruits of a proper inventory search. In *People v. Williamson* (1993), 241 Ill. App. 3d 574, 608 N.E.2d 943, this court held that introduction into evidence of written procedures for impounding vehicles required to be followed by a law enforcement agency whose officers make an inventory search is necessary to uphold an inventory search of those vehicles. No such evidence was presented here. The seizure of the bullets cannot be upheld on the basis they were the fruits of a proper inventory search.

■ Because the defendant had been transported from the scene of the arrest before Sutherland commenced his search of the vehicle, that search cannot be justified as a search incident to a lawful arrest. We agree with the circuit court in that regard. However, we disagree with the circuit court in its determination that use of the "plain view" doctrine is of no help in determining the propriety of Sutherland's search of the vehicle.

■ While the vehicle searched was on private property when Sutherland made the search, he was properly there in aid of an officer making a proper arrest of defendant. Prior to entering the vehicle, he looked into the passenger's side window and, according to testimony not disputed at the hearing on the motion to suppress, Sutherland saw two bullets on the driver's seat. He was not looking for weapons before he saw the bullets. (See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465-66, 29 L. Ed. 2d 564, 582-83, 91 S. Ct. 2022, 2037-38.) This involved "no intrusion covered by the Fourth Amendment." (1 W. La Fave, Search & Seizure §2.2(a), at 323 (2d ed. 1987) (hereinafter LaFave).) This was so even though Sutherland used a flashlight to illuminate the inside of the vehicle. (See LaFave at 329.) According to further undisputed testimony of Sutherland, he then entered the vehicle and searched for a gun which he thought was likely to be present if bullets were present. The presence of a bullet on the floorboard of an automobile has been held to create a reasonable indication of the presence of a gun in the vehicle. *State v. Wright* (1988), 104 Nev. 521, 523, 763 P.2d 49, 50.

The focus of defendant's complaint with the use of the bullets to prove his guilt has been phrased in terms of the allegedly unreasonable nature of the search of the vehicle. We recognize that although the fact the bullets were in "plain view" aids in justifying the search, grounds for the seizure must also be shown. (*Illinois v. Andreas* (1983), 463 U.S.

765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3324; LaFave at 324.) Here, the bullets had some evidentiary value in regard to proof of the seriousness of defendant's alleged threats to kill D.S. The seizure was also supported by the promotion of the public safety by seizing these items which could be used to injure another. The relatively light invasion of the automobile by Sutherland, necessary to seize the bullets which were in plain view, was not an unreasonable search.

We conclude that the trial court properly denied the motion to suppress even though the grounds stated by the court must now fail under the recent decision in *Williamson*. The undisputed evidence proved, as a matter of law, that the search and seizure were justified.

We now turn to the question of the sufficiency of the proof of defendant's guilt. In order to sustain a conviction under section 24–1.1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 24–1.1(a)), the State is required to prove defendant's knowing possession of a prohibited firearm or ammunition and his prior felony conviction. (*People v. Rangel* (1987), 163 Ill. App. 3d 730, 739, 516 N.E.2d 936, 942.) Defendant contends the State did not show he knowingly possessed the bullets. He does not dispute that he had a felony conviction prior to the date of the incident.

Criminal possession may be actual or constructive, and where the possession is constructive, the State is required to establish defendant's knowledge of the presence of the prohibited weapon or ammunition and his immediate and exclusive control over the area where it was found. (*Rangel*, 163 Ill. App. 3d at 739, 516 N.E.2d at 942.) In *Rangel*, the court noted:

> "The element of knowledge may, and most often must, be proved by circumstantial evidence [citation]; and although mere presence in the vicinity of the contraband is insufficient to establish constructive possession, control over its location gives rise to such an inference which is not undermined by the presence of others in the vicinity." *Rangel*, 163 Ill. App. 3d at 739, 516 N.E.2d at 942.

At defendant's jury trial, Officer Avery testified to substantially the same course of events as he had at the suppression hearing but elaborated on the discussion he had with defendant concerning the ownership of the car. He said defendant indicated the car belonged to his deceased mother, and although there was no paperwork to support that allegation, Avery later learned that defendant was correct. Avery testified the car defendant had been driving had not been reported as stolen. He also said that he went through the car briefly before placing defendant in his squad car, but he did not see any bullets.

Officer Sutherland's testimony at trial was also substantially the same as it had been at the suppression hearing. The bullets were introduced into evidence. Sutherland testified that he looked for a gun in the car but did not find one.

Defendant testified at trial as follows: (1) he knew that because of his past criminal record, he could not possess a gun or ammunition, and that he could be punished for doing so; (2) he was employed and had been dating D.S., a coemployee; (3) they were not dating at the time of his arrest, but he wanted to see her on that day, to find out why the relationship ended; (4) he had given the woman a set of keys to the car, and she refused to return them; (5) she had used the car in the 10 days prior to his arrest, and she could have used it that day without his knowledge or permission; (6) he had also given rides to people on the day of his arrest; (7) he did not see any bullets on the seat and was not aware they were there; (8) he did not put the bullets there; (9) he did not have a weapon; and (10) he admitted the other items found on the seat were his. He said he had told Officer Avery that "Joe" was driving, but he was being sarcastic and decided not to tell the officer that he meant to say "Joe Momma" was driving.

Defendant cites *People v. Seibech* (1986), 141 Ill. App. 3d 45, 489 N.E.2d 1138, where the defendant's conviction for unlawful use of weapons was reversed because the State failed to prove defendant had knowledge of the presence of the firearm found on the floor behind the driver's seat of defendant's car. There, the court noted that "[k]nowledge on the part of an accused of the existence of a firearm within his possession may be inferred from circumstantial evidence." (*Seibech*, 141 Ill. App. 3d at 48, 489 N.E.2d at 1141.) In addition, the court noted that "ordinarily one driving his own car with a firearm in it would be presumed to have knowing possession" of the firearm. (*Seibech*, 141 Ill. App. 3d at 49, 489 N.E.2d at 1141.) The court concluded, however, that the presumption could be effectively rebutted.

In *Seibech*, the defendant testified that he had driven two men home from a hunting area earlier on the day he was arrested. He said he did not know the rifle had been left in the car. One of the hunters testified at trial and corroborated the defendant's testimony, stating that he had been in a hurry when defendant dropped him at his apartment, and in his haste, he forgot his gun. The court found this evidence plausible and since it was not impeached, the jury could not disregard the testimony. *Seibech*, 141 Ill. App. 3d at 49, 489 N.E.2d at 1141.

Defendant maintains here that a reasonable explanation for the presence of the bullets in his car is that they dropped out of the pocket of one of his previous passengers. However, he could not name the per-

sons who had allegedly been passengers on that day, and he did not offer the testimony of any of those passengers to corroborate that theory.

In *Rangel*, the undisputed evidence showed that the car from which the weapon was removed was owned by defendant and that he was in possession of it for at least 1½ hours before the weapon was retrieved by the police. According to the State's witnesses, the weapon was in plain view on the floor of the car where defendant had been sitting just before he exited and was apprehended by police.

■ Here, defendant admitted he owned the car, the bullets were within his reach, and he presented no corroborating evidence to establish ownership of the bullets by someone else. In addition, Officer Sutherland testified the bullets were visible when he looked into the car from the passenger's side window. This was sufficient to raise the presumption that defendant was in constructive possession of the contraband.

The jury determined that defendant was guilty based upon the evidence presented. The jury was in the best position to weigh the credibility of the witnesses and resolve any conflicts or inconsistencies in the testimony. There was no dispute that defendant had a prior felony conviction, he knew his possession of ammunition was prohibited, and he admitted the car was his. He also admitted ownership of the other items found on the seat in close proximity to the ammunition.

A criminal conviction will not be set aside unless the evidence, when viewed in the light most favorable to the prosecution, could not be found by any rational trier of fact to prove the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) The jury could reasonably have concluded from the evidence presented that defendant, a convicted felon, knowingly possessed the prohibited ammunition and was proved guilty of the offense beyond a reasonable doubt.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

KNECHT and COOK, JJ., concur.