2019 IL App (1st) 191038-U

No. 1-19-1038

Third Division
December 11, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| In re M.M., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | No. 18 JD 1453 |
| v. | ) | |
| | ) | Honorable |
| M.M., | ) | Daryl J. Jones, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |
| | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**O R D E R**

¶ 1    *Held*: Evidence presented in delinquency proceedings was sufficient for minor respondent to be found guilty of aggravated unlawful use of a weapon and unlawful possession of a firearm where the minor respondent was in constructive possession of a firearm.

¶ 2    Minor respondent, M.M., appeals from the juvenile court's adjudications of delinquency pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5 *et seq.* (West 2018)) and sentence of 30 days in the Juvenile Department of Corrections. Following a bench trial, M.M. was found delinquent of aggravated unlawful use of a weapon (AUUW) (720

ILCS 5/24-1.6(a)(1) (West 2018)) and unlawful possession of a firearm (UPF) (720 ILCS 5/24-3.1(a)(1)). On appeal, he contends that his adjudications should be reversed because the State did not prove he had constructive possession of a handgun. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Following events that transpired on August 31, 2018, the State brought a petition for adjudication of wardship against M.M. on three counts of AUUW and one count of UPF. At the adjudication hearing on December 17, 2018, Chicago police officer Michael Donnelly was the only testifying witness. The evidence adduced at the proceeding is as follows.

¶ 5      On August 31, 2018, about 7:15 p.m., Officer Donnelly was in his marked police vehicle with his partner, Chicago police officer Guzman, near the intersection of Jackson and Washtenaw Avenue in Chicago. Donnelly testified that it was light out with normal weather conditions. He observed a car run a stop sign but could not recall the make or model of the car. Another police vehicle occupied by Chicago police officers Cappello and Torres made a U-turn and followed the subject car. Donnelly followed them. He observed the subject car hit another vehicle and come to a stop in a vacant lot near the intersection of Van Buren Street and California Avenue. There were four occupants in the car, and he saw M.M. exit from the driver's side door, put his hands in the air, and kneel on the ground. M.M. was then detained. Donnelly performed a search of the vehicle and found a black handgun on top of the center console between the driver and passenger seats. The handgun was loaded, and Donnelly emptied the magazine and the chamber. Donnelly could not recall the make or model of the handgun. At the time of his arrest, M.M. was not engaged in any violation of the Wildlife Code.

¶ 6    Donnelly was equipped with a body camera at the time. A 26-second video clip was shown to the court. The recorded clip shows the inside of the car through the driver's side door. Both of the car's airbags were deployed and a black gun is seen on the center console with the handle pointed towards the driver's seat and the barrel pointed towards the passenger's seat. The video shows Donnelly reaching into the car, grabbing the handgun, and walking around to the other side of the car. The video shows M.M. kneeling on the ground next to one of the police vehicles and damage to the front bumper of the car. On cross-examination, Donnelly stated that M.M. did not make any admissions regarding the handgun and he did not see M.M. holding the handgun at any time.

¶ 7    The circuit court found Officer Donnelly to be a credible witness and that the video clip corroborated his testimony. Accordingly, the court found M.M.guilty of one count of AUUW (720 ILCS 5/24-1.6(a)(1)/(3)(I) (West 2018)) and UPF but dismissed the other two AUUW counts. The count of AUUW was based on M.M.'s age and that he was not engaged in "lawful activities" permitted under the Wildlife Code. M.M. filed a motion to reconsider whether the State had proved that M.M. was in constructive possession of the handgun. In denying the motion, the court addressed several factors in affirming its finding of constructive possession. The court stated that evidence showed: that the handgun was visible and positioned towards the driver's seat where M.M. would have been sitting; that M.M. exited the driver's side door and immediately surrendered to law enforcement; that M.M. would have been driving the car for a period of time that would indicate that he was aware of the handgun.

¶ 8    The court sentenced M.M. to 30 days in the Juvenile Department of Corrections.  M.M. served his sentence and was released on May 31, 2019.

¶ 9                                    II. ANALYSIS

¶ 10         On appeal, M.M. contends that the circuit court's findings of delinquency should be reversed where the State failed to prove constructive possession of the handgun. Specifically, M.M. disputes he had knowledge of the firearm and that he exercised immediate and exclusive control over the area where it was found.

¶ 11         After filing a delinquency petition, the State must prove the elements of the substantive offense(s) charged beyond a reasonable doubt. *In re Ryan B.*, 212 Ill. 2d 226, 231 (2004). The applicable standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *In re Q.P.*, 2015 IL 118569, ¶ 24. Because the trial court has observed and heard the witnesses, this court may not retry the defendant or substitute its judgment for that of the trier of fact, especially concerning the witnesses' credibility, the weight given to their testimony, and the reasonable inferences that may be drawn from their testimony or other evidence. *In re Jonathan C.B.*, 2011 IL 107750, ¶ 59. The reviewing court will reverse a conviction only where the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007).

¶ 12         Here, M.M. was found guilty of one count of AUUW and UPF, both of which require proof that a defendant actually possessed a firearm. The AUUW count for which M.M. was found guilty, provides that a person commits the offense of AUUW if he knowingly possesses a firearm while under the age of 21 years, unless he is "engaged in lawful activities under the Wildlife Code." 720 ILCS 5/24-1.6(a)(1)/(3)(I) (West 2018). A person is guilty of

UPF where he is under 18 years of age and knowingly possessed a firearm of a size that may be concealed upon his person. 720 ILCS 5/24-3.1(a)(1) (West 2018).

¶ 13 Possession may be proved by evidence of actual possession or constructive possession. *People v. Dismuke*, 2017 IL App (2d) 141203, ¶ 44. Constructive possession exists where the defendant had knowledge of the firearm and exercised immediate and exclusive control over the area where the firearm was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. "Constructive possession is typically proved entirely through circumstantial evidence." *People v. Moore*, 2015 IL App (1st) 140051, ¶ 23. It is the trier of fact's role to determine the factual questions of knowledge and control. *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000).

¶ 14 As stated above, M.M. contends that the State failed to prove beyond a reasonable doubt that he had knowledge of the firearm and that he exercised control over the area where it was found. To establish knowledge, the State must present other evidence in addition to defendant's mere presence in the car. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002); see also *People v. Love*, 404 Ill. App. 3d 784, 788 (2010) ("[A] defendant's mere presence in a car where contraband is found is not enough to establish the defendant's knowledge of the contraband."). The following factors are considered in inferring knowledge: (1) the visibility of the weapon from a defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon. *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 15 Here, the handgun was in plain view on top of the center console in the car. The video showed that the gun was large enough to be seen by the occupants of the vehicle and was visible from the driver's seat. It was not hidden in any way. Donnelly testified that M.M.

immediately exited the driver's side door after the crash, suggesting that M.M. was in the driver's seat when the car crashed. Moreover, the handle of the gun was pointed towards the driver's seat. Thus, it was reasonable for the court to infer that M.M. had knowledge of the handgun's presence in the vehicle and the State satisfied its burden of proof. See *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 36 ("Because such an inference is reasonable, it is allowed, and this court must defer to the trier of fact.").

¶ 16    M.M. asserts several hypothetical scenarios where he would not have known about the handgun: (1) he could have climbed over the front seat from the backseat to exit from the driver's side front door; (2) the gun could have been placed on the center console after M.M. exited the driver's seat; and (3) the gun could not have been sitting on the center console before the car crashed because the crash would have sent it to another area of the car. Though the circumstantial evidence supporting a defendant's conviction must exclude every reasonable hypothesis of innocence, "the trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Rhodes*, 85 Ill. 2d 241, 249 (1981). After considering the circumstantial evidence in this case, we do not find M.M.'s theories to be reasonable, as compared to the reasonable inferences that the trial court found to support its findings: that M.M. was driving the car and the handgun was present when he exited the car. See *People v. Weeks*, 2012 IL App (1st) 102613, ¶ 32 ("The trier of fact is not required to *** search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt."). Thus, we reject M.M.'s arguments as to his lack of knowledge.

¶ 17    We further find that there was evidence presented that defendant had immediate and exclusive control over the handgun. Defendant argues that control could not be established

because there were other people in the car and there was no evidence that he touched the firearm or that he owned the car. The fact that the other occupants of the car may have had access to the handgun does not defeat the finding that defendant possessed the gun. See *People v. Spencer*, 2016 IL App (1st) 151254, ¶ 25. Moreover, there is no competing evidence that would make it reasonable to instead infer that one of the other occupants controlled the gun.

¶ 18       Control over the location where the firearm was found "gives rise to an inference that [the defendant] possessed the [firearm]." *Id*. Though nothing in the record indicates that M.M. owned the car, the evidence shows that M.M. retained control over the car where the handgun was found. Officer Donnelly's testimony implicates M.M. as the driver of the car, and we have already rejected M.M.'s theories that he was not the driver. Additionally, the handgun was found on top of the car's center console, and M.M. would have been in close proximity to it from the driver's seat. Not only was the handgun located in close proximity to where M.M.would have been seated, but the handle of the handgun was also pointed towards the driver's seat. We agree with M.M. that proximity to the handgun alone is insufficient to prove constructive possession, "where the other circumstantial evidence is sufficiently probative, proof of proximity combined with inferred knowledge of the presence of [the handgun] will support a finding of guilt on charges of possession." *People v. Brown*, 277 Ill. App. 3d 989 (1996). Thus, M.M.'s control over the car and the placement of the handgun lends further support for the reasonable inference that he constructively possessed the handgun.

¶ 19       We also are not persuaded by the cases to which M.M. cites for support of his argument that the State did not present sufficient evidence on the issue of constructive possession. In

*People v. McIntyre*, 2011 Il App (2d) 100889, *People v. Hampton*, 358 Ill. App. 3d 1029 (2005), and *People v. Gore*, 115 Ill. App. 3d 1054 (1983), the defendants therein were not the drivers of the cars, as here, or the contraband was not in plain view, as here, or both. As we have related, the court reasonably inferred that M.M. was the driver of the car and the evidence showed that the handgun was visible, in close proximity to M.M., and was positioned in a way that suggested M.M.'s knowledge and control over it. In *People v. Tates*, 2016 IL App (1st) 140619, the defendant was located in a living room and the contraband was located in plain view and he fled from the residence, but there was no evidence that he had control over the contraband because he was merely a visitor to the residence. Finally, in *People v. Seibach*, 141 Ill. App. 3d 45 (1986), there was additional testimony from both the defendant and his friend that negated the State's theory that the weapon was the defendant's.

¶ 20       In sum, after viewing the evidence in the light most favorable to the State, we find that a reasonable fact finder could conclude that M.M. was in constructive possession of the handgun. M.M. was the driver of the car that ran the stop sign and crashed into the other vehicle. He was seen exiting the driver's side of the car immediately following the crash, and the court made a reasonable inference that M.M. was the driver of the vehicle. Thus, M.M. exercised control over the area where the firearm was found. Additionally, the handgun was found between the driver's seat and the passenger's seat on top of the center console in plain view. The video clip showed that the handgun was readily visible from the driver's seat. Finally, the handgun's handle was pointing towards the driver's seat, and the court made a reasonable inference that that fact also suggested that M.M., as the driver, was in possession of the handgun.

¶ 21    Accordingly, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that M.M. possessed the handgun and, thus, to sustain his delinquency adjudications for AUUW and UPF.

¶ 22                                  III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court.

¶ 24    Affirmed.