2020 IL App (1st) 182555-U

No. 1-18-2555

Order filed October 23, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 12999 |
| | ) | |
| STEPHAN GILMORE, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE GRIFFIN delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for aggravated unlawful use of a weapon where the evidence presented was sufficient to support the trial court's finding that he constructively possessed a firearm.

¶ 2    Following a bench trial, defendant Stephan Gilmore was found guilty of six counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2016)). The court merged the counts into count I and sentenced defendant to one

year in prison. On appeal, defendant contends that the evidence was insufficient to establish that he possessed a firearm. For the following reasons, we affirm.

¶ 3     Defendant was charged by indictment with six counts of AUUW stemming from his alleged possession of an uncased, loaded, and immediately accessible firearm on or about his person, or in a vehicle on August 12, 2017.

¶ 4     Prior to trial, defendant filed a motion to suppress evidence and a motion to suppress statements. In the motion to suppress evidence, defendant requested the court to quash his arrest and any evidence resulting from it because the arrest was made without authority of a warrant, there was no probable cause that defendant committed or was about to commit a crime, and there were no articulable facts that the officer feared for his safety. In the motion to suppress statements, defendant sought to suppress all communications made by him once he was placed into custody because he was not informed of his *Miranda* rights after his arrest and did not waive his rights.

¶ 5     The court held a hearing on defendant's motions. Illinois State Trooper Timothy Mayerbock testified that on August 12, 2017, he was driving on I-94 northbound when he observed a Hyundai speeding. The Hyundai also had an inoperable registration light. He identified defendant as the driver of the Hyundai. Defendant exited I-94 northbound at the 43rd Street exit and Mayerbock executed a traffic stop. When Mayerbock activated his emergency lights, defendant's "shoulders leaned towards the front," and he pulled over to the farthest right-hand portion of LaSalle Street off the exit ramp. Mayerbock approached defendant on foot and asked for identification. Defendant indicated he did not have a driver's license. Mayerbock then detained defendant and placed him in the rear of the police vehicle.

¶ 6    Mayerbock asked defendant if there was any contraband in the vehicle. Defendant initially stated that it was not his vehicle, and he denied there being contraband inside the vehicle. Based on defendant's heavy, labored breathing and excited behavior, Mayerbock again asked if there was contraband, and defendant stated that there was a small amount of cannabis in the vehicle. Mayerbock searched the vehicle, and under the driver's seat felt "a small framed firearm." He recovered the firearm and also recovered cannabis, which was in a cigarette box.

¶ 7    On cross-examination, Mayerbock testified that when he pulled the vehicle over, he observed both of defendant's shoulders "duck forward" and his head also move forward. Defendant was wearing sunglasses when it was approximately 9:48 p.m. and dark outside. When Mayerbock approached the vehicle, defendant's "lower body was shifting from side to side," his breathing was labored, and he hyperventilated at one point. Defendant also spoke in "excited tones." Mayerbock conducted a search of the vehicle to recover the cannabis and as part of tow inventory, which is routinely done to document personal items of importance. During the search, Mayerbock detected the mild odor of cannabis. He continued to search the vehicle and found the firearm at which point he handcuffed and *Mirandized* defendant. Defendant stated he had no knowledge of the firearm. Defendant initially stated his sister owned the vehicle and later elaborated that it belonged to a close friend of his. Mayerbock ran the plate through the Department of the Secretary of State and verified that defendant was not the owner of the vehicle. The vehicle was ultimately towed.

¶ 8    The court denied defendant's motions. In doing so, the court found there was probable cause for the arrest, and that although the search of the vehicle violated defendant's fourth

amendment rights, the firearm would have been subject to inevitable discovery. Defendant waived his right to a jury trial, and the case proceeded immediately to a bench trial.

¶ 9    The parties stipulated that defendant had not been issued a currently valid firearm owner's identification (FOID) card or a valid license under the Firearm Concealed Carry Act, that the firearm recovered from the vehicle was operable and functioned properly, and that the prior testimony of the hearing on the motions to suppress would be adopted.

¶ 10    The court found defendant guilty of all six counts of AUUW. In doing so, the court noted defendant appeared to be nervous, made shoulder movements "leaning towards the bottom or underneath the seat," and did not own the vehicle but was driving it. The court found that under the circumstances "most importantly the movements towards the bottom underneath the seat" that the State proved its case.

¶ 11    Defendant filed a motion for new trial, which was denied. The court merged counts II through VI into count I, and sentenced defendant to one year in prison. Defendant did not file a motion to reconsider sentence.

¶ 12    On appeal, defendant argues that the evidence presented was insufficient to prove beyond a reasonable doubt that he possessed a firearm where the State failed to prove he knowingly possessed a firearm.

¶ 13    We initially note that the parties disagree on the standard of review. Defendant argues that because the operative facts are undisputed the trial court's finding that he possessed the firearm should be reviewed *de novo*. See *In re Ryan B.*, 212 Ill. 2d 226, 231 (2004) (holding review was *de novo* where there were uncontested facts and the question was whether the defendant's act of asking a child a question was enticement or coercion). The State argues that the relevant inquiry

is whether "after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In this case, we review the conviction under the *Jackson* standard because the question presented is factual rather than legal, and we are asked to rule on inferences drawn from the trial evidence. See *People v. Loggins*, 2019 IL App (1st) 160482, ¶¶ 29, 32.

¶ 14    In a bench trial, the judge is the trier of fact, and is entrusted "to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Therefore, the reviewing court "will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses." *Id.* at 224-25. On appeal, we are "not required to search out all possible explanations consistent with innocence." *People v. Grant*, 2014 IL App (1st) 100174-B, ¶ 24. Ultimately, the appellate court "will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 15    To sustain defendant's conviction for AUUW, the State was required to prove that defendant knowingly carried a firearm on or about his person and he did not have a valid CCL or FOID card at the time. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2016).

¶ 16    Possession of a firearm can be actual or constructive. *People v. Smith*, 2015 IL App (1st) 132176, ¶ 26. Where, as here, defendant is not found in actual possession of the firearm the State must prove defendant constructively possessed the firearm. Constructive possession is established by proving "that the defendant: (1) knew of the weapon's presence and (2) exercised control over

the area where the weapon was found." *Id.* Both elements of constructive possession are often proven through circumstantial evidence. *People v. McCurine*, 2019 IL App (1st) 160817, ¶¶ 22-24. We first review whether the State sufficiently proved that defendant exercised control over the vehicle where the firearm was found.

¶ 17 Here, the evidence was sufficient for the trial court to find that defendant exercised control over the vehicle where the firearm was found. Although defendant did not own the vehicle, the record shows that he was pulled over after driving alone on I-94. See *People v. McNeely*, 99 Ill. App. 3d 1021, 1024 (1981) (Where the defendant is the driver of the vehicle even in cases where there is a lone passenger, he will have immediate and exclusive control of the inside of the automobile).

¶ 18 Defendant nevertheless argues that his immediate control over the vehicle was not sufficient because his control of the vehicle was not exclusive given that someone else owned the vehicle. See *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002) (An element of constructive possession is defendant exercising "immediate and exclusive control over the area" where the firearm is found.). However, "[t]he law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband." *People v. Givens*, 237 Ill. 2d 311, 338 (2010) (quoting *People v. Ingram*, 389 Ill. App. 3d 897, 901 (2009)). "When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of *joint* possession." (Emphasis in original.) *Id.* Here, the State sufficiently proved that defendant was driver and the lone occupant of the vehicle, and therefore evidence of another's ownership of the vehicle does not diminish defendant's control.

¶ 19 Having determined that the State sufficiently proved that defendant exercised control over the vehicle, we now examine whether the evidence was sufficient to show that he had knowledge of the firearm. Proof that defendant had "regular ongoing, control" over the premises where the contraband was found and the contraband was "an item human experience teaches is rarely, if ever, unaccountably in such a place" gives rise to an inference of his knowledge and possession of that contraband. *People v. Hampton*, 358 Ill. App. 3d 1029, 1031-33 (2005).

¶ 20 "A defendant's mere presence in a car, without more," is not evidence of knowledge of a firearm in the vehicle. *Bailey*, 333 Ill. App. 3d at 891. Knowledge may be proven by evidence of the defendant's "acts, declarations, or conduct from which it can be inferred that he knew the contraband existed." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Knowledge may be inferred from factors including "(1) the visibility of the weapon from defendant's position in the car, (2) the period of time in which the defendant had an opportunity to observe the weapon, (3) any gestures by the defendant indicating an effort to retrieve or hide the weapon, and (4) the size of the weapon." *Bailey*, 333 Ill. App. 3d at 892.

¶ 21 Here, Mayerbock observed defendant speeding on I-94 northbound in the local lanes at 51st Street and pulled defendant over at the 43rd Street exit. As Mayerbock activated the emergency lights, he observed defendant's "shoulders leaned towards the front." Mayerbock also saw from the driver's side-view mirror both of defendant's shoulders "duck forward." See *People v. Nesbit*, 398 Ill. App. 3d 200, 210 (2010) (affirming the defendant's conviction where defendant was sole occupant and driver of the vehicle, committed furtive movements, and the handle of the firearm was visible). The "small framed firearm" was discovered under defendant's seat. Mayerbock related that defendant was acting excited, shifting side-to-side and laboring in his

breathing to the point of hyperventilation. In finding defendant guilty, the trial court noted that defendant's nervousness demonstrated his knowledge and that he made movements towards the bottom of the seat where the firearm was recovered. After viewing this evidence in the light most favorable to the State, we find that a rational trier of fact could have concluded that defendant constructively possessed the firearm. Stated differently, the evidence supporting the court's finding defendant guilty of AUUW is not so unreasonable, improbable, or unsatisfactory as to permit us to overturn his convictions. See *Newton*, 2018 IL 122958, ¶ 24.

¶ 22    Defendant argues that there were unrelated reasons for his nervousness including his possession of cannabis, and driving without a license. However, the trial court is not required to seek out all possible explanations consistent with innocence and elevate those explanations to a level or reasonable doubt. *People v. Castillo*, 2018 IL App (1st) 153147, ¶ 33. As mentioned, it is for the trier of fact to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *Siguenza-Brito*, 235 Ill. 2d at 228. This court may not substitute its judgment for the trier of fact on these matters. *Id.* at 224-25.

¶ 23    Defendant's reliance on *People v. Seibech*, 141 Ill. App. 3d 45 (1986) is misplaced. In *Seibech*, the defendant was convicted of unlawful use of weapons and failure to possess a FOID card on evidence showing that a firearm was recovered from his vehicle after he had dropped off two passengers, who hunted earlier in the day. *Id.* at 46-48. The defendant testified that he was not aware of the presence of the firearm in the car and explained that one of the two passengers must have left a firearm in the car because they were the only two to have firearms in the car that day. *Id.* at 47. One of the passengers testified that he had left his firearm in the defendant's car. *Id.* at 48. This court reversed the defendant's conviction for unlawful use of weapons finding that the

evidence was insufficient to show that he knowingly possessed a firearm. *Id.* at 49. Here, unlike in *Seibech*, there was no evidence provided that anyone other than defendant owned the firearm in question. Also, in this case, unlike in *Seibech*, there was evidence in the form of defendant's movements and nervous behavior to support the inference that he knew the firearm was present.

¶ 24    For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 25    Affirmed.